MARY T. CONSTANT et al., Executors, etc., Respondents, *v.*
THE UNIVERSITY OF ROCHESTER, Impleaded, etc., Appellant.

A principal is only chargeable with notice communicated to or knowledge
acquired by his agent in another transaction at another time and when
he was acting for another principal, when clear proof is made that the
knowledge or notice was present in the mind of the agent at the time of
the transaction in question.

The simple fact, therefore, that an attorney who has taken a mortgage for
his client and placed it on record, had previously taken for another client
a mortgage on the premises which was not recorded, does not charge the
junior mortgagee with knowledge of the existence of the prior mortgage;
it must be made to appear clearly that the attorney at the time of the
execution and delivery of the second mortgage had in mind the existence
of the prior one, and not only this, but also that he knew it was still an
existing and valid lien. If he did recollect that the prior mortgage was
executed, but honestly believed that it was then or had been satisfied,
although mistaken on that point, the second mortgagee would not be
charged with notice of its existence.

As to whether, where in such a case the attorney had knowledge of the
existence of the prior mortgage, and had it in his possession, and was
charged with the duty of having it recorded, and so the duties he owed
his two principals were conflicting, the second principal would be charged
with the knowledge of the agent, *quære.*

*Constant* v. *University of Rochester* (22 J. & S. 515) reversed.

(Argued October 22, 1888; decided January 15, 1889.)

APPEAL by defendant, the University of Rochester, from a
judgment of the General Term of the Superior Court of the
city of New York, entered upon an order made January 3,
1887, which affirmed a judgment in favor of plaintiff entered
upon a decision of the court on trial at Special Term. (*Mem.*
of decision below, 22 J. & S. 515.)

This action was brought to foreclose a mortgage dated
February 17, 1883, executed by Elizabeth Meehen, then the
owner of the mortgaged premises, and her husband, to plaintiff's
testator. The said defendant set up a title acquired by pur-
chase upon sale under a judgment in a foreclosure suit, upon
a mortgage executed to it by Mrs. Meehen and her husband,
dated January 10, 1884, and recorded January 11, 1884. At

the time of the sale plaintiffs' mortgage had not been recorded, and said defendant denied any notice or knowledge of its existence until the commencement of this action, and claimed its mortgage to be the prior lien.

The facts, so far as material, are stated in the opinion.

*Martin W. Cooke* for appellant.    Plaintiffs having brought defendant into court upon a claim based on an instrument presumptively void as to defendant, they could not maintain an action upon it against defendant without proof of facts rebutting such presumption, and, under objection, they could not prove them without appropriate allegations. (*Hetzel* v. *Barber*, 69 N. Y. 1, 9 ; *Freeman* v. *Shroeder*, 43 Barb. 618 ; *Peabody* v. *Roberts*, 47 id. 91 ; *Crofut* v. *Wood*, 3 Hun, 571, 573 ; *Pope* v. *Waring*, 76 N. Y. 463, 469.) The relinquishment by the university for the mortgage in question, of the security which it held by its $9,000 mortgage, was a valuable consideration. (*Wood* v. *Chapin*, 13 N. Y., 509, 524 ; *Cary* v. *White*, 52 id. 138, 143 ; *Picket* v. *Barrow*, 29 Barb. 505 ; *Webster* v. *Van Steenburgh*, 46 id. 211.) The court erred in its conclusion that the University of Rochester had constructive notice of the Constant mortgage at the time of receiving its mortgage. In any event, knowledge in Deane occupying the relation to all parties interested, which he must have occupied, could not bind either party in favor of the other. (*Hope Fire Ins. Co.* v. *Cambreling*, 3 T. & C., 496 ; 1 Hun, 493 ; *Voltz* v. *Blackmar*, 64 N. Y. 440, 446 ; *Bk. of Pittsburg* v. *Whitehead*, 36 Am. Dec. 186, 191, 192, 193 ; *Wassel* v. *Reardon*, 54 i⁀ 245, 246 ; *Loeb* v. *Hellman*, 13 J. & S. 336 ; *Marie* v. *Ga. rison*, 13 Abb. N. C. 210, 229, 230 ; *Bruce* v. *Davenport*, 2 Barb. 349 ; *Morrison* v. *O. L. C. R. R. Co.*, 52 id. 173 ; *National Life Ins. Co.* v. *Minch*, 53 N. Y. 144 ; *N. Y. C. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 14 id. 85, 91 ; *Clafin* v. *F. & C. Bk.*, 25 id. 293, 294 ; *Howard Ins. Co.* v. *Halsey*, 8 id. 271 ; *Williamson* v. *Wood*, 15 id. 354, 360, 362 ; *Cambridge Valley Bk.* v. *Delano*, 48 id. 326, 336, 338 ; *Parker* v. *Connor*, 93 id. 118.) Constructive

notice is a legal inference from established facts. (*Birdsall* v. *Russell*, 29 N. Y. 220; *Claflin* v. *Lenheim*, 66 id. 301; *Bennett* v. *Buchan*, 76 id. 386; Code Civ. Pro., §§ 1631, 1671; *Webster* v. *Van Steenburg*, 46 Barb. 211.) At the commencement of this action the plaintiff's mortgage was not a lien upon the premises in question. (*Brown* v. *Johnston*, 7 Abb. N. C. 188; *Kortright* v. *Cady*, 91 N. Y. 343; *Peck* v. *Minot*, 3 Abb. Ct. of App. 465; *Coles* v. *Appleby*, 87 N. Y. 114, 119; *Smith* v. *Kidd*, 68 id. 130.) The equities in this equitable action are all in favor of the University of Rochester. (*Fisk* v. *Potter*, 2 Keyes, 64, 75; *Parish* v. *Wheeler*, 22 N. Y. 494, 508; *Mayor, etc.*, v. *Draper*, 23 Barb. 425, 429; *Briggs* v. *Easterly*, 62 id. 51; *Jervis* v. *Smith*, 7 Abb. Pr. 217, 222; *Voorhees* v. *Seymour*, 26 Barb. 569, 583; *Spraights* v. *Hawley*, 39 N. Y. 441, 448; *Moore* v. *Met. Nat. Bk.*, 55 id. 41, 47.) By his acts Mr. Constant became estopped from claiming under this mortgage against the university. (*Blair* v. *Wait*, 69 N. Y. 113; *Viele* v. *Judson*, 82 id. 32, 40; *Fireman's Ins. Co.* v. *Lawrence*, 14 Johns. 55.)

*John E. Parsons* for respondents. When a lawyer has been put by his client in possession of a bond, mortgage and satisfaction piece, this gives to him the power; and where the mortgagor does actually pay the amount of the mortgage to the lawyer, may imply authority to accept payment. It does not, however, imply any general authority from the client; the authority is limited and applies only to the particular transaction, or, at the most, to other transactions which are similar in character. (*Smith* v. *Kidd*, 68 N. Y. 130; *Williams* v. *Walker*, 2 Sandf. 325.) Authority which results from a course of conduct on the part of the agent, which has been approved or acquiesced in by the principal, applies only in cases which are similar in their essential features. (Story on Agency, § 87.) If Deane had both been vested with authority to receive payment of Mr. Constant's mortgage, and had undertaken to exercise the authority, no money was received by him from

the Meehens which could be applied to such payment. Without the receipt by Deane of the amount the mortgage would stand. (Story on Agency, §§ 98, 99, note, § 104; *Sweeting* v. *Pearce*, 7 C. B. [N. S.] 449; *Russell* v. *Bangley*, 4 B. & Ald. 395.) If Deane had had full authority to receive payment for Mr. Constant, and even if he had received funds which he could use to pay Mr. Constant, he could not, without actual payment, treat Mr. Constant's mortgage as paid, so as to clear the mortgaged property in order to enable him to discharge his own obligation to the university by the mortgage which he gave to it. (Story on Agency, § 78; *De Bouchout* v. *Goldsmid*, 5 Ves. 211; *Parsons* v. *Webb*, 8 Greenl. 38.) The omission by Deane to record Mr. Constant's mortgage gave no priority to the mortgage of the university. (Story on Agency, § 140; *Bank of U. S.* v. *Davis*, 2 Hill, 451; *The Distilled Spirits*, 11 Wall. [U. S.] 356, 366.) The fact that the plaintiff's mortgage was not recorded did not change the character of the action or require any special allegations in the complaint, or justify the dismissal of the complaint. (*Drury* v. *Clark*, 16 How, 424; 3 R. S. [7th ed.] 2215, § 1; *Robinson* v. *Wheeler*, 25 N. Y. 252; *Seymour* v. *Van Slyck*, 8 Wend. 403; *Jackson* v. *Hill*, 5 id. 532; *People* v. *Snyder*, 41 N. Y. 397; *Page* v. *Waring*, 76 id. 463, 469.)

PECKHAM, J. In taking the mortgage of January, 1884, we think the university occupied the position of mortgagee for a valuable consideration. It surrendered a prior mortgage, with the accrued interest thereon, and took the mortgage in question. If the university be not chargeable with notice of the prior mortgage to Constant, which was unrecorded, then its own mortgage is the prior lien as between the two. The first important question arising is, did Deane, who acted in the transaction as the attorney and agent for the university at the time of the execution of the mortgage to the university, have knowledge of the existence of the prior mortgage to Constant, executed in February, 1883, and which he then took as agent for Constant? In other words, is there any proof that he in January, 1884, had that fact present in his mind and recollec-

tion, so that it can be said from the evidence that he then had knowledge of its existence as an unpaid, outstanding obligation? The transaction out of which the mortgage to the university arose occurred eleven months subsequent to the transaction out of which the mortgage in suit arose ; and the former mortgage was neither a part of the same transaction as the latter, nor had it the least connection therewith. Under the law, as decided by the older cases in England, such fact would have been an absolute defense to the claim that there was any constructive notice to the defendant arising out of notice to its agent, because such notice was in another and entirely separate transaction. In *Warrick* v. *Warrick*, decided by Lord Chancellor Hardwicke in 1745 (3 Atk. 291, 294), that able judge assumed it as unquestioned law that notice to the agent, in order to bind his principle by constructive notice, should be in the same transaction. He said : "This rule ought to be adhered to, otherwise it would make purchasers and mortgagees' title depend altogether on the memory of their counselors and agents, and oblige them to apply to persons of less eminence as counsel, as not being so likely to have notice of former transactions." Cases were continually arising subsequent to that case wherein the principle was assumed as the law of England, although the cases did not in their facts absolutely call for a decision on that point.

But in *Mountford* v. *Scott* (1 Turn. & R. Ch. 274), upon an appeal from a decision of the vice-chancellor, Lord Chancellor Eldon said that the vice-chancellor proceeded upon the notion that notice to a man in one transaction is not to be taken as notice to him in another transaction. The lord chancellor continued : "In that view of the case it might fall to be considered whether one transaction might not follow so close upon the other as to render it impossible to give a man credit for having forgotten it." He further said that he would be unwilling to go so far as to say that if an attorney has notice of a transaction in the morning he shall be held in a court of equity to have forgotten it in the evening ; that it must, in all cases, depend upon the circumstances.

In *Hargreaves* v. *Rothwell* (1 Keen's Ch. 154), Lord LANG-
DALE, master of the rolls, held that where one transaction is
closely followed by and connected with another, or where it is
clear that a previous transaction was present to the mind of the
solicitor when engaged in another transaction, there is no ground
for a distinction by which the rule, that notice to the solicitor
is notice to the client, should be restricted to the same
transaction.

In *Nixon* v. *Hamilton* (2 Dru. & Wal. Irish Ch. 364, decided
in 1838), Lord Chancellor PLUNKET adverted to the rule as to
the necessity of notice in the same transaction, and stated, if it
were notice acquired in the same transaction, necessarily the
principal was to be charged with the knowledge of the agent;
but if it were notice received by him in another transaction,
then such notice was not to affect the principal unless he
actually had the knowledge at the time of the second transac-
tion. (See, also, the case of *Dresser* v. *Norwood*, decided in
the Court of Exchequer Chamber, and reported in 17 Com.
Bench [N. S ] 466.)

This modification of the old English rule is recognized in
the comparatively late case of *The Distilled Spirits* (11 Wall.
356). Mr. Justice BRADLEY, in delivering the opinion of the
Supreme Court of the United States, stated that the doctrine
in England seems to be established that, if the agent at the
time of effecting a purchase has knowledge of any prior lien,
trust or fraud affecting the property, no matter when he
acquired such knowledge, his principal is affected thereby.
If he acquire the knowledge when he effects the purchase, no
question can arise as to his having it at that time. If he acquired
it previous to the purchase, the presumption that he still retains
it and has it present to his mind will depend upon facts and
other circumstances. Clear and satisfactory proof that it was
so present seems to be the only restriction required by the
English rule as now understood. And the learned justice
states that the rule, as finally settled by the English court, is,
in his judgment, the true one, and is deduced from the best

consideration of the reasons on which it is founded. In this opinion the whole court concurred.

Story, in his work on Agency (§ 140), says : " But unless notice of the fact come to the agent while he is concerned for the principal, and in the course of the very transaction, or so near before it that the agent must be presumed to recollect it, it is not notice thereof to the principal. For otherwise the agent might have forgotten it, and then the principal would be affected by his want of memory at the time of undertaking the agency. Notice, therefore, to the agent before the agency is begun, or after it has terminated, will not ordinarily affect the principal."

In *Bank of the United States* v. *Davis* (2 Hill, 451), it was held that the principal is deemed to have notice of whatever is communicated to his agent while acting as such in a transaction to which the communication relates. And it was held in that case that notice to a bank director or knowledge obtained by him while not engaged officially in the business of the bank would be inoperative as notice to the bank.

In *Holden* v. *New York and Erie Bank* (72 N. Y. 286), the rule was explained, and it was therein held that where an agency was in its nature continuous and made up of a long series of transactions of the same general character, the knowledge acquired by the agent in one or more of the transactions is to be charged as the knowledge of the principal and will affect the principal in any other transaction in which the agent as such is engaged and in which the knowledge is material. In that case it will be seen, upon reading the very able opinion of FOLGER, Ch. J., that there was no question as to the knowledge of the agent of the various facts, and the only question raised was whether it should be imputed to his various principals in the transactions.

In *Cragie* v. *Hadley* (99 N. Y. 131), the doctrine that the knowledge of the agent should come to him in the identical transaction was alluded to, and it was held that it was not necessary in all cases that the notice should be thus given, and that notice to an agent of a bank intrusted with the manage-

ment of its business was notice to the corporations in trans-
actions conducted by such agent, acting for the corporation in
the scope of his authority, whether the knowledge of the
agent was acquired in the course of a particular dealing or on
some prior occasion. (See, also, *Welsh* v. *German American
Bk.*, 73 N. Y. 434; *Atlantic State Bk.*, etc. v. *Savery*, 82
id. 291).

From all these various cases it will be seen that the farthest
that has been gone in the way of holding a principal charge-
able with knowledge of facts communicated to his agent,
where the notice was not received, or the knowledge obtained,
in the very transaction in question, has been to hold the prin-
cipal chargeable upon clear proof that the knowledge which
the agent once had, and which he had obtained in another
transaction, at another time and for another principal, was
present to his mind at the very time of the transaction in
question. Upon a careful review of the testimony in this
case, we have been unable to find any such proof. It is true
the learned trial judge finds that, contemporaneously with
the execution of the mortgage to the university, Deane caused
to be made a statement, upon the basis that the amount was
to be loaned to the mortgagors, and that, out of the money
coming to them as a consideration for the mortgage to the uni-
versity, the amount of the bond and mortgage to the plaintiff's
decedent, with interest, was to be paid, and that mort-
gage was to be satisfied. And he further found, that the
university, through Deane, had notice of the mortgage of the
plaintiff's decedent in connection with, and as part of, any pro-
posed transaction by which there was to be loaned to the
mortgagor the amount of the bond and mortgage to the uni-
versity. What is meant by the word "contemporaneously,"
as used in this finding, is, perhaps, not absolutely clear. If
it meant that the statement mentioned was procured to
be made by Deane, as a part of and coincident with the
execution of the mortgage to the university, it is not, as
we think, based upon any evidence. There is no proof what-
ever in this case that Deane procured this statement to be

made by anybody, and Deane himself says that a statement of this nature would, by the course of practice in his office, have come to him (made by some one in his office), the day after the loan was closed. He does not pretend to recollect this particular statement, nor is there any evidence that he procured it to be made. His testimony shows that he had no special recollection of the things which took place upon the occasion of the execution of the bond and mortgage to the university, further than appeared by his books and other memoranda then made by others; and he does not pretend to say that this particular statement was presented to him, or that he had the least knowledge of its existence, or of the facts therein stated, until the day after the closing of the transaction, and the execution of the mortgage to the university.

This is every particle of evidence that there is upon which a finding could be based, such as the learned judge made of knowledge or notice on the part of Deane of the existence of the Constant mortgage at the time of the transaction with the university, and the execution of the mortgage to it. The other facts in the case uncontradicted are that, for some years prior to January, 1884, Deane and the plaintiffs' decedent were acting together, and that the plaintiffs' decedent was, weekly and even almost daily, in the habit of investing large amounts of money upon mortgages of this nature, and that the dealings of plaintiffs' decedent in these various building mortgages, through Deane's office, had amounted, at the time of the mortgage to the university, in the aggregate, to three millions of dollars, if not more; that the mortgages were of all sizes, from six up to forty thousand dollars. It also appears that this very mortgage in suit was found after the execution of the university mortgage in a pigeonhole in which satisfied mortgages were kept, and was found by the assignee of Deane after the assignment was made.

There is no proof in the case showing that Deane made any pretense of remembering, at the time of the execution of the mortgage to the university, that, eleven months before, he had taken a mortgage on the same property for the plaintiffs'

decedent, which was not recorded.  Taking into consideration the enormous amount of business done by Deane for Constant of this same general nature, and the length of time that elapsed since the taking of the Constant mortgage by him, and the fact that it was never taken from the office by the mortgagee, and that it remained there and was found in a pigeonhole appropriated to satisfied mortgages, and that on the very statement in question upon which the learned judge evidently based his finding, it is alluded to as satisfied ; all these facts would tend to show very strongly that Deane had no recollection whatever of the existence of the Constant mortgage as an existing lien at the time he took the mortgage to the university.

But the burden is upon the plaintiff to prove, clearly and beyond question, that he did, and it is not upon the defendant to show that he did not have such recollection.  And we think that there is a total lack of evidence in the case which would sustain the finding that Deane had the least recollection on the subject at the time of the execution of the university mortgage.  Under such circumstances we think it impossible to impute notice to the university, or knowledge in regard to a fact which is not proved to have been possessed by its agent. If such knowledge did not exist in Deane at the time of his taking the mortgage to the university, then the latter is a *bona fide* mortgagee for value, and its mortgage should be regarded as a prior lien to that of the unrecorded mortgage of Constant which is prior in point of date.  The plaintiffs are bound to show by clear and satisfactory evidence that when this mortgage to the university was taken by Deane, he then had knowledge, and the fact was then present to his mind, not only that he had taken a mortgage to Constant eleven months prior thereto on the same premises, which had not been recorded, but that such mortgage was an existing and valid lien upon the premises, which had not been in any manner satisfied.  If he recollected that there had been such a mortgage, but honestly believed that it was or had been satisfied, then, although mistaken upon that point, the university could

not be charged with knowledge of the existence of such mortgage.

Quite a strong reason for not imputing knowledge to the agent in this case, unless upon evidence clear and satisfactory, is that, if he had such knowledge, and thus knowingly took an utterly worthless security for his principal, he acted in the most improper and dishonest manner, and willfully caused a loss to his principal of, substantially, the whole amount of the money represented by the mortgage which he took as a second lien. While this consideration is not controlling, if the evidence justified the assumption, it is yet of considerable weight, and adds to the propriety of the rule requiring clear proof of such knowledge at the very time of taking the mortgage to the university.

One other question has been argued before us which has been the subject of a good deal of thought. It is this: Assuming that Deane had knowledge of the existence of the Constant mortgage at the time of the execution of the mortgage to the university, is his knowledge to be imputed to the university, considering the position Deane occupied to both mortgagees?

While acting as the agent of Constant in taking the mortgage in question as security for the funds which he was investing for him, it was the duty of Deane to see that the moneys were safely and securely invested. The value of the property was between eleven and twelve thousand dollars; and it was obviously the duty of Deane to see to it that the mortgage which he took upon such property as a security for a loan of $6,000 for Constant should be a first lien thereon. ( *Whitney* v. *Martine*, 88 N. Y. 535.) In order to become such first lien it was the duty of Deane to see to it that the Constant mortgage was first recorded. In January, 1884, when acting as agent for the university to invest its moneys, he owed the same duty to the university that he did to Constant, and it was his business to see to it that the security which he took was a safe and secure one. Neither mortgage was safe or secure if it were a subsequent lien to the other upon this property. This

duty he continued to owe to Constant at the time he took the mortgage to the university.

At the time of the execution of the latter mortgage, therefore, he owed conflicting duties to Constant and to the university, the duty in each case being to make the mortgage to each principal a first lien on the property. Owing these conflicting duties to two different principals, in two separate transactions, can it be properly said that any knowledge coming to him in the course of either transaction should be imputed to his principal? Can any agent occupying such a position bind either principal by constructive notice? It has been stated that in such a case where an agent thus owes conflicting duties, the security which is taken or the act which is performed by the agent may be repudiated by his principal, when he becomes aware of the position occupied by such agent. (Story on Agency, § 210.)

The reason for this rule is, that the principal has the right to the best efforts of his agent in the transaction of the business connected with his agency, and where the agent owes conflicting duties he cannot give that which the principal has the right to demand, and which he has impliedly contracted to give. Ought the university to be charged with notice of the existence of this prior mortgage when it was the duty of its agent to procure for it a first lien, while, at the same time, in his capacity as agent for Constant, it was equally his duty to give to him the prior lien? Which principal should he serve? There have been cases where, in the sale and purchase of the same real estate, both parties have employed the same agent, and it has been held under such circumstances that the knowledge of the agent was to be imputed to both of his principals. If, with a full knowledge of the facts that his own agent was the agent of the other, each principal retained him in his employment, we can see that there would be propriety in so holding; for each then notes the position which the agent has with regard to the other, and each takes the risk of having imputed to him whatever knowledge the agent may have on the

subject.    (See *Le Neve* v. *Le Neve*, 1 Ambler's Reports, 436, HARDWICKE, Chancellor, decided in 1747; *Toulmin* v. *Steere*, 3 Merivale, 209, decided in 1817, by Sir WALTER GRANT, Master of the Rolls.)    The case of *Nixon* v. *Hamilton*, already referred to, decided by Lord PLUNKET, Lord Chancellor, in the Irish Court of Chancery, in 1838 (2 Drury & Walsh, 364), is a case in many respects somewhat like the one at bar, so far as this principle is concerned, if it be assumed that Deane really had the knowledge of the prior mortgage as an existing lien.    It will be observed, however, upon examination of it, that the question whether the knowledge of the common agent in two different transactions with two different principals was notice to the second principal was not raised with reference to this particular ground.    The whole discussion was upon the subject of imputing the knowledge of the agent to the second mortgagee, of the existence of the prior mortgage, which knowledge was not obtained in the last transaction.    Whether such knowledge should or should not be imputed to the second mortgagee, because of the conflicting duties owed by the common agent, was not raised.    The only defense set up was that the information did not come to the agent of the second mortgagee in the course of transacting the business of the second mortgagee, and the question was simply whether such knowledge could be imputed to the second mortgagee, because of the knowledge acquired by his agent at another time, in another transaction, with another principal.    The court held, that where it appeared, as in this case it did appear, fully and plainly, that the matter was fresh in the recollection and, fully within the knowledge of the agent, and under such circumstances, that it was a gross fraud on the part of the agent, in the first place in keeping a prior mortgage off the record, and in the second place, in not communicating the knowledge which he had to his principal, the second mortgagee, that in such case the second mortgagee was charged with the knowledge of his agent.

Whether the same result would have been reached if the

other ground had been argued we cannot, of course, assume to decide. I have found no case precisely in point where the subject has been discussed and decided either way. I have very grave doubts as to the propriety of holding in the case of an agent, situated as I have stated, that his principal in the second mortgage should be charged with knowledge which such agent acquired in another transaction at a different time while in the employment of a different principal, and where his duties to such principal still existed and conflicted with his duty to his second principal. We do not deem it, however, necessary to decide the question in this case.

For the reasons already given the judgment should be reversed and a new trial ordered, with costs to abide the event.

GRAY, J. (dissenting.) The question presented by this appeal seems to possess sufficient interest to call for a brief statement of the grounds, upon which we dissent from the views entertained by a majority of the court.

With respect to the transaction of the loan to the university, Deane was, of course, not acting in any sense as the agent of Constant. In that transaction Constant had no interest. But as Constant's agent, with respect to his mortgage, Deane owed him a duty. He should have advised him of the contemplated mortgage to the university, so that his own mortgage might be recorded and made the prior lien. In failing to do so he violated his duty. In the transaction of the loan to the university, he was its agent; but was chargeable with the knowledge of the prior unsatisfied and unrecorded mortgage to Constant. That knowledge was imputable to his principal, the university, and affected it with such notice as to deprive it of the protection which, otherwise, it would have been entitled to under the recording act. Its rights were made, thereby, subject to those of Constant. The transaction in which the university was engaged was an independent one; but in it the knowledge of the agent who conducted it was visitable upon his principal.

The trial judge found that Deane had knowledge of the Constant mortgage at the time of the transaction of the university loan, and I think the evidence supports such a finding in the proof of the circumstances attending it.

The general rule is not open to dispute that notice to the agent is notice to the principal. If the agent has knowledge of a fact, while he is acting for the principal, in the course of the very transaction which becomes the subject of the suit, this operates as constructive notice to the principal himself. For, upon general principles of policy, it must be taken for granted that the principal knows what the agent knows.

" To constitute constructive notice, it is not indispensable that it should be brought home to the party himself. It is sufficient if it is brought home to the agent, attorney or counsel of the party; for in such cases the law presumes notice in the principal, since it would be a breach of trust in the former not to communicate the knowledge to the latter." (Story's Eq. Jur. § 408.) These rules are well recognized as underlying the law of principal and agent. In their application to agents of a corporation, they were asserted recently by ANDREWS, J., in *Cragie* v. *Hadley* (99 N. Y. 131). In *Brotherton* v. *Hatt* (2 Vern. 574), A. made three several mortgages to B. C. and D., and in the last mortgage B. is a party and agrees that after he is paid he will stand trustee for D. It was decreed by the master of the rolls, and affirmed by the lord keeper, that the second mortgagee, C., should be paid before D.; for the same scriveners being employed in all transactions, notice to them of C.'s mortgage was notice to D. In *Norris* v. *Le Neve* (3 Atk. 26, 35), a bill of review (which is granted upon discovery of new matter not known before the decree) was refused by Lord HARDWICKE, where it appeared that the parties' attorney, solicitor or agent, in an ejectment upon the same title tried prior to the decree, had in his possession, at the time of that trial, the documents from which the new matter was collected. In *Nixon* v. *Hamilton* (2 Dru. & W. 364), W. B., a land and law agent of F. H., negotiated a deed of separation and maintenance between F. H. and his wife, and

by fraud prevented its registry.  Four years afterwards he was employed in the negotiation of a loan of money, which was advanced on a registered mortgage of the estates comprised in the deed of maintenance, as solicitor both for F. H. and the lender.  In a contest for priority between the unregistered deed of maintenance and the registered mortgage, it was held that, inasmuch as the knowledge acquired in the transaction of the deed of maintenance was brought home to W. B. and its continuance so clearly proved as to make it fraudulent on his part to conceal it, when acting in the mortgage transaction, such fraud on the part of W. B., the agent, was visitable on his principal, the lender, and that the latter should be treated as one, who, through his agent, had actual notice of the deed of maintenance, and that, consequently his, deed should be postponed to the wife's unregistered deed.

Lord PLUNKET, in *Nixon* v. *Hamilton*, said : " If, from the circumstances of the case, it satisfactorily appeared that the attorney, at the time of the second transaction, had full knowledge and recollection of the first transaction, it was fraudulent in him to conceal it from his principal, and, if so, the principal should not be at liberty to derive a benefit from the fraud of his attorney.  *   *   *   However acquired, if it (knowledge) existed at the time of the second transaction, it was fraud to conceal it, and this fraud of the attorney should be visited on the principal."  It has been held that where, in the purchase of real estate, the same agent is employed for both parties, each side is affected with notice as much as if different agents had been employed.  (Ambler, 439.)  In *Toulmin* v. *Steere* (3 Merivale, 210), where the purchaser of an estate employed the vendor's agent, who had notice of an existing incumbrance which affected it, the master of the rolls held that such notice to the agent operated constructively as a notice to his employer, notwithstanding an infant was interested in the purchase.

In *Champlin* v. *Laytin* (6 Paige, 203), Chancellor WALWORTH said : " For certain purposes and where the equitable rights of third persons are concerned, it has been found neces-

sary by this court to hold a purchaser to be chargeable with constructive notice of all the facts communicated to his attorney or agent for the purchase or in the examination of the title, and that notice of the existence of a deed was good constructive notice of the contents of the deed itself, especially if it was one of the deeds under which the purchaser derived his title to the premises." (*Griffith* v. *Griffith*, 9 Paige, 317.)

The conclusion at which I have arrived, after the examination of this record, is that the university was chargeable with notice of the existing unrecorded mortgage, through the knowledge coming to its agent and attorney, Deane, and it cannot, therefore, be regarded as a subsequent purchaser in good faith. In *Paige* v. *Waring* (76 N. Y. 463, 469, 470), there is nothing conflicting with my views. Judge EARL recognizes the well-settled rule that the valuable consideration required by the statute to support a subsequent conveyance must be accompanied by the element of good faith; that is to say, an absence of notice of the previous unrecorded conveyance.

There can be no reasonable doubt as to his complete representation of the university as its agent, attorney, and, indeed, managing trustee, in the transaction forming the subject of this investigation; while, in refusing to find any facts showing Deane to have been at the time, in the transaction, empowered to represent or bind Constant, the learned trial judge was sustained by the absence of proofs to establish them. This is not a question of morals; but one simply as to what is the legal conclusion from the facts disclosed by the proofs.

I think the judgment at Special Term was right, and that the judgment of the General Term affirming the same should be affirmed by this court.

All concur with PECKHAM, J., for reversal, except ANDREWS and GRAY, JJ., dissenting.

Judgment reversed.