“Freedman, J.
The testimony given hy Mr. Squires, if full effect is to be given to it, establishes conclusively that Mr. Deane had full knowledge of the Constant mortgage as an existing obligation at the very moment *89 that he, on behalf of the university, took the Meehen mortgage on the Lexington avenue property.
“ Upon a careful consideration of the whole evidence, inclusive of probabilities, I could find no reason for refusing to believe the testimony of Mr. Squires, and I arrived at the conclusion that full effect should be given to it. The deficiency in the proof pointed out by the Court of Appeals in 111 N. Y., 604, has, therefore, been fully supplied.
“ This knoAvledge on the part of Deane at the very moment in question was, under the circumstances of this case, acquired by him in the very course of the business of the university, and consequently constituted notice to the university.
" The plaintiffs are, therefore, entitled to judgment, even if it were to be held that the university parted with value for the mortgage which Dean substituted. For parting with value alone is not enough. The statute requires that it must be done on the faith of the substituted mortgage. This requires ignorance of the rights of prior mortgages.
" The evidence, which is more complete than it was on the former trial, compels me to find, however, that at the time of the acceptance by Deane of the Meehen bond and mortgage on the Lexington avenue property to the university, the previous bonds and mortgages of the university on the One Hundred and Seventh street property had been satisfied, and that that property had been mortgaged to Mr. Earle’s clients the day before the university mortgage in question was executed. In accordance with this view of my duty I have made such a finding, but beyond that I shall let the facts speak for themselves.
“I have settled and signed all necessary findings of fact and conclusions of law. The requests of the defendants I have marked refused, except so far as they are covered by the findings of fact and conclusions of law settled *90 and signed by me. If the defendants should prefer, however, to submit a revised set of requests which can be refused unqualifiedly, they may do so on notice to the plaintiffs, and I shall pass upon them hereafter.
Martin W. Cooke, attorney and of counsel, for appellant, argued:—
The questions to be specially discussed upon this argument relate to the position indicated by the opinion of the court below. In the opinion of the Court of Appeals, 111 N. Y. Rep., 604-613, it is laid down : “ The plaintiffs are bound to show by clear and satisfactory evidence that when this mortgage to the university was taken by Deane, he then had knowledge, and the fact was then present in his mind, not only that he had taken a mortgage to Constant eleven months prior thereto on the same premises, which had not been recorded, but that such mortgage was an existing and valid lien upon the premises, which had not been in any manner satisfied. If he recollected that there had been such a mortgage, but honestly believed that it was and had been satisfied then, although mistaken on that point, the university could not be charged with a knowledge of the existence of such mortgage.” The court below held that the testimony given by Mr. Squires, if full effect is to be given to it, establishes conclusively that Mr. Deane had full knowledge of the Constant mortgage as an existing obligation when he took the mortgage for defendant. The opinion indicates that this fact was found from the evidence of the conversation between Squires and Deane, on the 11th of January after the execution of the mortgage to defendant. In the opinion it appears that the justice at the trial overlooked the evidence in respect of the agreement on the 10th of January, 1884, for the mortgage on the Lexington avenue property. Squires *91 testified that he knew previously to January 11, 1884, that the bond and mortgage in question were to be executed. He also testified that if Mr. Deane directed him not to record the mortgage in question after the receipt of the satisfaction pieces on the 10th, it was on the 11th in the conversation, showing that if Deane’s attention was called to the Constant mortgage at any time after his agency was initiated (each transaction was separate), in respect of the transaction in question, it was after the delivery of the satisfaction pieces (they were sent from Rochester on the 8th). It appears they had not been received on the 9th; receipt was acknowledged on the 10th. After the execution of the mortgage in question to the defendant, and not before his attention was called to the Constant mortgage, not after he received the satisfaction pieces and before he had parted with them, or before the mortgages for the principal sums had been executed. The evidence shows (and there is no proof to the contrary), that it was agreed and understood on the 10th January, 1884, when the satisfaction pieces were delivered that the Lexington avenue mortgages were to be executed the next day to take the place of the principal sums of the mortgages so satisfied that day, and on that day (the 10th) the interest was paid to defendant up to the 11th, and the defendant was, on that day, informed of the promised new mortgages (one of which is the mortgage in question) and also the insurance policies were promised as security for them. There can be no rational question about this, and the Court of Appeals so treated this evidence and held that the Lexington avenue mortgages were agreed to be made, and were made, in consideration of the discharge of the 107th street mortgages of like amount. This was all done, the interest paid and the mortgage for the principal sum actually executed and ready for record when the interview took place, and. the evidence of Squires, referred to above, shows that no conversation took place *92 prior to that moment, and after the receipt of the satisfaction pieces from the university. They were actually received on the 10th of January. There is no evidence whatever in any way tending to show a present knowledge in Deane, that is during the time from the receipt of the satisfaction pieces on the 10th January and the actual execution of the mortgage in question, unless, as it may be claimed, the testimony as to the examination of the contents of the tin box and the decisions not to record the mortgages, including the Constant mortgage in question, furnishes such evidence. But it will be seen that in none of those examinations or decisions was Deane doing any act for or in behalf of the university. The Lexington avenue mortgage in question was never thought of by anybody until the 10th January, 1884, and the transaction by which the university parted with the satisfaction pieces and received the mortgage in question, was not authorized or contemplated prior to the 10th January, 1884. That was the date in which the agency or authority was initiated by which the change was made. Up to that date the university held its security on the 107th street lots absolutely and without obligation to part with it except by payment.
*90 “ Judgment must be given for the plaintiffs, with costs and all allowance.”
*92 I submit that upon the evidence above referred to, appellant successfully established the following points : (1.) The court erred in finding that Deane had knowledge of the Constant mortgage at the time of the creation of the mortgage in question to the appellant, and that it had notice through him of the plaintiff’s mortgage in connection with and as part of the transactions in which the Meehen bond and mortgage to it, were received by Mr. Deane for its account. (2.) The court erred in holding (if it did so hold) that the university did not occupy the position of mortgagee for a valuable consideration. The Court of Appeals upon the same evidence, held that it surrendered a prior mortgage and took the mortgage in question. (111 N. Y. Rep., 604, 607.)
John E. Parsons, attorney and of counsel, for respondents, argued:
I. The university, through Mr. Deane, its agent, and through his firm of Deane & Chamberlin, its attorneys, had notice of Mr. Constant’s mortgage at the time that its own mortgage was taken. The fact of Mr. Constant’s mortgage, and that it was an existing and valid lien upon the premises which had not in any manner been satisfied, was present to the minds both of Deane and of Deane & Chamberlin when the university mortgage was taken. This being so, notice to Deane and to Deane & Chamberlin was notice to the university. That Deane was the agent, and Deane & Chamberlin the attorneys of the university in mortgage investment transactions; that they were relied upon to ascertain whether property mortgaged to the university was free from liens, and so that it was within their employment to know whether or not the premises were subject to the Constant mortgage, was proved without dispute. Mr. Squires proved that from the time that the Constant mortgage was executed down to the very occasion of the execution of the Meehen university mortgage in question, the Constant mortgage, as a lien upon the premises, was continually brought to the attention of Deane and was within his knowledge. Deane gave to Mr. Squires the direction to prepare the satisfaction piece for the Constant mortgage. The only answer to this was the testimony of Deane himself. He testified that he gave the direction that the mortgage to the university should be put on the premises in question. He confirmed Mr. Squires’ evidence about going over the box of unrecorded papers and his deciding whether mortgages should or should not be recorded. He did not contradict Mr. Squires. He merely testified that he could not recollect whether there was such a conversation as Mr. Squires testified to. He confirmed Mr. Squires’ statement that the examination of the box of unrecorded mortgages took place as often as three or four times a *94 month. But Deane himself proved that, in making the arrangement for the mortgage to the university, he took into account, and so that he had in his mind at the time the fact of the Constant mortgage. He determined that it should be satisfied, and then informed Mr. Squires. He did testify that the statement made by Mr. Squires did not usually come to him until after the day after the transaction was closed.
11. The university did not part with a valuable consideration for its mortgage in question. The Meehen One Hundred and Seventh street mortgages, which are claimed to have furnish'ed the consideration, were, with satisfaction pieces, sent to Deane on January 7, 1884. On that day they were charged to him in his account on the university ledger. It was admitted, and was found by Judge Freedman, that the One Hundred and Seventh street mortgages were actually satisfied of record on January 10, 1884. The university mortgage in question was not executed until January 11, 1884. So far as the principle of law is concerned it might just as well have been executed on January 11, 1885. From January 10,1884, when the One Hundred and Seventh street mortgages were extinguished, the situation of the university was that of a creditor. Deane owed the university the amount of the One Hundred and Seventh street mortgages. The Meehens also owed the amount. The question is whether, on account of this indebtedness, they could give the university a mortgage which, being put upon record by Deane, who had withheld from record the Constant mortgage, could thereby become superior to the Constant mortgage. It is obvious that they could not. The university lost nothing by reason of its mortgage in question. It had previously extinguished the mortgage which is claimed to have furnished the consideration. 1 R. S., 756; Young v. Guy, 87 N. Y., 457; Cary v. White, 52 Ib., 141; Page v. Waring, 76 Ib., 463, 469. It is true that *95 Deane attempted to make out that the mortgage in question was taken in place of,the mortgage that was satisfied. Upon the trial before Judge Freedman it was clearly proved, and is found by him, that although one mortgage was proposed to be taken for the other the earlier mortgage was satisfied before the new mortgage existed.
Per Curiam.
We have examined the record, in the light of the opinion of the Court of Appeals (111 N. Y., 604), and find that the defects in the proof on the former trial have been supplied, and that the present record requires an affirmance. For these reasons and those expressed by the trial judge in his opinion, printed on pages 70 and 71, of the case, the judgment appealed from must be affirmed, with costs.