MARIA A. BRINKERHOFF, Appellant, *v.* AMARILLA B. SARTWELL,  as Executrix, etc., of HENRY J. SARTWELL, Deceased, and Others, Respondents.

*Fraud — rescission of a contract, induced by statements believed to be true — knowledge of the agent — hearsay evidence.*

The knowledge which an agent has at the time of the sale of personal property is binding upon his principal.

In an action brought by a married woman to rescind a sale of the stock of a corporation, made by her husband as her agent, on the ground that it had been induced by fraudulent representations of the vendee, it appeared that her husband was an organizer, and also a stockholder and trustee and a general sales agent of the corporation; that he had a better knowledge of its condition than the alleged fraudulent vendee, and that " this knowledge was present to his mind " when he made the sale in question; and, further, that the statements of the vendee were not derived from actual knowledge, and that he had reason to believe that such statements were true. It also appeared that the value of the stock was uncertain, and that at the time of the sale its fair value did not exceed the price paid.

*Held,* that a judgment in favor of the defendants would not be disturbed.

A plaintiff cannot testify to statements, made by an alleged fraudulent vendee to her agent, which have been merely repeated to her by her agent.

APPEAL by the plaintiff, Maria A. Brinkerhoff, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Cayuga on the 16th day of March, 1892, upon the report of a referee dismissing the plaintiff's complaint upon the merits.

*S. E. Payne,* for the appellant.

*W. E. Hughitt,* for the respondents.

BRADLEY, J. :

The plaintiff was the owner of twenty-five shares, and her son, Frederick D. Brinkerhoff, of two shares of the stock of the Empire Wringer Company, of the par value of $100 each, and on the 31st day of December, 1878, through Jacob Brinkerhoff, the husband of the plaintiff, those twenty-seven shares were sold to Henry J. Sartwell at the price of thirty-one dollars and fifty cents per share.

The plaintiff having taken an assignment of the alleged claim of

her son, seeks a rescission of the sale and transfer of the twenty-seven shares of stock and recovery of the amount of dividends paid upon them since the transfer, on the alleged ground that the sale of the stock to him was procured by the fraud of Sartwell.

The Empire Wringer Company as a partnership, formed in 1873, composed of Jacob Brinkerhoff and others, continued until January 1, 1877, when it was succeeded by the company as a corporation, and its capital consisted of patents, material, manufactured goods, machinery, belting, tools, patterns, sheds, fixtures and unexpired insurance, estimated at $62,278.97, transferred by the partnership to the corporation with the good will of the business of the partnership, estimated at $1,121.03, making together $64,000, which constituted the capital of the company. The corporation thereupon issued 640 shares of its capital stock of the par value of $100 each, of which 134 shares were issued to Jacob Brinkerhoff and 25 shares by his direction to the plaintiff, his wife, and the residue to others. And it entered upon the business of manufacturing clothes wringers, barbed fence, cot beds and wash benches.

The manufacture and sale of the wringer proved to be a profitable business, which from and after 1878 was productive of dividends to the stockholders. The barb fence branch of the business was a burden and had resulted in a loss of about $45,000 to the company at the time of the sale of the stock.

The alleged fraud is predicated upon representations made by Sartwell to Jacob Brinkerhoff, who acted as the agent of his wife and son in making the sale. If the referee had adopted the testimony of Brinkerhoff as correctly representing the transaction of the sale, it is very likely that the conclusion would have followed that Sartwell was chargeable with misleading Brinkerhoff by false and deceptive representations in making the purchase. But the referee has not found and has refused to find the facts in accordance with such testimony, which, in view of the relation of Brinkerhoff to the transaction and to the plaintiff, the referee was permitted to do. In the outset Brinkerhoff applied to Sartwell for a loan upon the security of the stock, which was declined with the remark that he would purchase it at its value. Shortly after Brinkerhoff advised Sartwell that his wife and son had concluded to sell the stock, and the referee found that thereupon Sartwell stated (as he had proposed to do in the

first interview) that he had investigated the business; that it was in bad shape, was hardly paying expenses; that the wringer business had fallen off; that the fence business had absorbed a large amount of the assets; that he did not care whether he bought or not; that it would be a good deal like buying a cat in a bag; that he would pay thirty-one dollars and fifty cents per share for the twenty-seven shares, which in his opinion was all it was worth. His proposition was accepted and the transfer of the certificates made. The referee further found that Sartwell made the statements, not from actual knowledge, but from the conclusion he drew from investigation of the books and from conversations with the officers of the corporation; that he had reason to believe that the representations made by him were true, and they were so as nearly as he could ascertain; that they were not made with intent to deceive, or to induce the sale of the stock for less than its value; that the agent, Brinkerhoff, by reason of his relation to the corporation as one of its organizers, stockholders, trustees and its general sales agent, had a better knowledge than Sartwell of the condition of its property, business and affairs, and that "this knowledge was present to his mind when he sold these 27 shares of stock." And the referee added that, in view of the situation as it appeared at the time of the sale, the shares of the stock were not fairly worth to exceed thirty-one dollars and fifty cents per share.

The view which the referee was permitted to take of the evidence as a whole enabled him to find the facts as he did find them. Sartwell's death has deprived the defense of his evidence. And as the transaction occurred more than ten years before the trial and eight years before the action was commenced, the referee may be deemed to have been justified in subjecting to his careful scrutiny the testimony of witnesses who seemed to have some interest in the question. His findings upon the subject of the statements made by Sartwell in the negotiations which resulted in the sale of the stock, and relating to the inducements for making it to him, were fairly permitted by the evidence, and on this review are treated as supported by it. As it turned out, the stock was at the time of the sale worth much more than the price paid for it, as for several years thereafter it was productive annually of a very respectable dividend. But shutting out from view the subsequent events, the value of the

stock at the time of the transfer was quite uncertain. It was dependent solely upon the success of the business. No dividend had then been made since the creation of the corporation. A part of the capital on its organization consisted of patents estimated at $25,000, reduced in 1878 to $19,269.51, some of which would expire in a few years; the branch known as the barb fence business had been carried on at a loss of about $45,000, and there was then apparently an increasing competition in the wringer business; the sales of the wringer had, in 1878, fallen considerably below those of each of the years 1875, 1876, 1877, and such decrease in the number was from 26,524 in 1875, to 18,256 in 1876, to 15,526 in 1877, and to 13,435 in 1878. The company had concluded to close out or dispose of the barb fence branch of the business, which was done the next spring. And while the wringer branch had been productive and would have yielded dividends in the years 1877–1878 if the corporation had not been burdened with the losses in the barb fence department, the result of the business in the then future was a matter of speculation and uncertainty. The opportunity of Brinkerhoff to have and entertain an opinion founded on his judgment was no less than that of Sartwell. Brinkerhoff was one of the organizers of the business of the partnership as well as the corporation. He seems to have given the barb fence branch his preference, and sought patronage more especially for that on his trips as sales agent, but he was at the place of business of the company a considerable portion of the time, and in 1878 he attended seven of the ten meetings of the trustees that year. The finding of the referee that Brinkerhoff had better knowledge than Sartwell of the condition of the business of the corporation, and that such knowledge was present in his mind at the time of the transaction in question, was warranted by the evidence.

And the conclusion properly followed that the plaintiff and her assignor were chargeable with the knowledge which their agent, Brinkerhoff, had of the property, business and prospects of the corporation at the time of the sale of the stock. (*Constant* v. *University of Rochester*, 111 N. Y. 604.)

This proposition, however, has but little significance in the present case, since the question of fact on the main issue was determined by the findings of the referee adversely to the plaintiff.

There was no error in the exclusion of the evidence of the plaintiff offered to prove what her husband told her Sartwell had said to him in regard to the stock. In that transaction Brinkerhoff was and acted as the agent of the plaintiff, and in no sense represented the purchaser.

The judgment should be affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment affirmed, with costs.