### CROOKS v. PEOPLE'S NAT. BANK OF MALONE.

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

Dissenting opinion. For majority opinion, see 76 N. Y. Supp. 92.

PARKER, P. J. I cannot concur in the result which my brethren have reached in this case.

Briefly stated, the situation is as follows: Howard E. King & Son had drawn drafts to the extent of some $12,000 upon one Searles, and.

had procured them to be discounted by the defending bank. Some of such drafts were past due and had gone to protest; others had not yet matured. Searles was supposed to be insolvent. Howard E. King was the president of such bank. The bank examiner criticised these drafts as "one-name paper," and owing to such criticism the comptroller of the currency wrote to the bank on January 25, 1899, requiring that such paper be taken care of in some different manner. Mr. Marshall, who was the vice president and acting manager of the bank, called Mr. King's attention to that letter, and after some urging on Marshall's part it was arranged as follows: Searles made a note for the whole amount of the drafts, dated February 14, 1899, payable on demand to the order of one Paddock, who was entirely responsible. Paddock indorsed the same and waived demand, protest, and notice thereof. Howard E. King & Son thereupon indorsed under Paddock, and with such note took up all of the drafts above referred to. Such note was procured from Searles by King, and he procured the indorsement of Paddock thereon, and transferred to him, as security therefor, some $10,000 worth of bank and water stocks. Within two or three days thereafter the firm of Howard E. King & Son, and King himself, went into voluntary bankruptcy. It is found as a fact by the trial court that neither Marshall nor any of the officers of the bank, save King himself, had any knowledge of King's insolvency, nor any reasonable ground to believe that by taking up such drafts in the manner above stated he intended to prefer the bank over his other creditors. The trial court further found as a fact that neither King nor the said firm intended to prefer the bank when such note was so given.

Upon this appeal, this court holds that the knowledge which King must have had of his insolvency and of the insolvency of his said firm must be deemed the knowledge of the bank, and that his intent to prefer the bank follows irresistibly from the transaction above stated; and so the judgment of the trial court dismissing the complaint is reversed. It is in this conclusion that I am unable to concur.

I am of the opinion that the rule applicable to this question may be stated as follows: Knowledge acquired by an officer of a bank casually, and not while acting in his official character for the bank, is not to be imputed to the bank. It is not a legal inference that such knowledge was communicated by him to the bank. This is illustrated in the following cases: Mayor, etc., of City of New York v. Tenth Nat. Bank, 111 N. Y. 446, 457, 18 N. E. 618; Bank v. Clark, 139 N. Y. 307, 313, 34 N. E. 908, 36 Am. St. Rep. 705; Id., 139 N. Y. 314, 34 N. E. 910, 36 Am. St. Rep. 710. But if such officer subsequently acts for the bank, and the knowledge so acquired becomes material to the transaction in which he is so engaged, then such knowledge will be imputed to the bank if it is in his mind while so acting. As was said in Holden v. Bank, 72 N. Y. 294, "The knowledge of Ganson as an individual, or as an executor, was not imputable to the bank merely because he was its president, but because, when it acted through him as president in any transaction where that knowledge was material and applicable, it acted through an agent who at that very time had knowledge of facts which gave character to the trans-

action. * * *" See, also, Constant v. University of Rochester, 111 N. Y. 604, 610, 19 N. E. 631, 2 L. R. A. 734, 7 Am. St. Rep. 769; Weisser's Adm'r v. Denison, 10 N. Y. 68, 76, 61 Am. Dec. 731; Fulton Bank v. New York & S. Canal Co., 4 Paige, 127; Bank v. Neass, 5 Denio, 329. In Bank v. Davis, 2 Hill, 463, it is said: "I agree that notice to a director, or knowledge derived by him while not engaged officially in the business of the bank, cannot and should not operate to the prejudice of the latter;" but, nevertheless, the bank was in that case held liable because the director who had so acquired the knowledge subsequently acted officially in a matter which such knowledge affected, and therefore his knowledge was charged against the bank. All of these cases are recognized as authority in the recent case of Benedict v. Arnoux, 154 N. Y. 715, 49 N. E. 326. I do not know that this rule is disputed in the prevailing opinion, but it is there claimed that, "even if King was acting for himself, he was acting equally, if not in a greater degree, for the bank." It is true that his act worked an advantage to the bank. In that sense he was acting for it. His part in the transaction was favorable to, not against, the bank; but that he in any sense represented the bank in that transaction, I cannot discover. Two parties were acting,—the bank on the one side as a creditor, King on the other as a debtor. Marshall represented the bank. He, on behalf of the bank, demanded of King that the requirement of the comptroller that King change the drafts in question be complied with. King, as the only responsible party on such drafts, undertook to and did change them. He first procured his own debtor Searles to execute the note. Then he procured Paddock, as an additional party to the paper and for his accommodation, to indorse it; and then, after indorsing it in his firm name, he delivered it to Marshall for the bank, and took up the paper which the bank then held against his firm. Every act of his is the act of a debtor. In not a single feature of the transaction does he appear as a bank officer obtaining security from a debtor. He does not ask Paddock to indorse for the bank nor for Searles, but for himself. He does not as an officer of the bank pass upon the form or sufficiency of the note. Marshall does that. He does not as president, for the bank, receive the note and deliver to himself the drafts in exchange therefor. As a debtor, he tenders the note to Marshall, and Marshall, on behalf of the bank, performs every act that the bank was called upon to perform in the matter. As a matter of fact, King did not, as an agent of the bank, take any part whatever in the transaction. Hence, although he was in fact its president, the knowledge of his own pecuniary affairs derived from matters purely personal to himself, and not from any information acquired while acting officially for the bank, cannot within the rule above stated be imputed to the bank.

It is urged that, because King was not engaged in an attempt to injure the bank for his own benefit, it must be presumed that he gave to the bank all the knowledge that he had upon the subject of his own solvency. The reason why an agent engaged in an attempt to defraud his principal is not, under any circumstances, presumed to have disclosed his knowledge to the principal, is because such disclosure would defeat his purpose, and therefore may not reasonably be presumed;

but, if King's purpose in this case was to unlawfully prefer the bank, his disclosure to it of his insolvency and of his unlawful intent would equally defeat his purpose. It would give knowledge to the bank that would render his effort at a preference unavailing. Therefore there is the same presumption against his disclosure in this case as would exist if his purpose had been to advantage himself at the expense of the bank. But, as above stated, no presumption arises that an agent discloses to his principal knowledge acquired casually and while not engaged in performing the duties of his agency; and therefore, although King may have for some time been aware that he was insolvent (a fact which is by no means clear), it is not to be presumed that he had notified the bank to that effect; nor would such knowledge be imputed to it until the fact of his insolvency became material to some transaction in which King as its president, and in its behalf, was representing the bank.

I concur with the trial court that, when Marshall took the Paddock note and surrendered the drafts, neither he nor the bank had any knowledge of King's insolvency, or reason to apprehend it, and had no reasonable ground to suppose that it would operate as a preference to the bank over his other creditors; that the knowledge which King had of his purpose, and of his financial condition, was not imputable to the bank, and therefore it was entitled to hold the full value of the Paddock note as against all other creditors.