## GASPARD et al. v. FOURTEENTH STREET STORE.

(Supreme Court, Appellate Division, First Department.    March 10, 1911.)

1. PRINCIPAL AND AGENT (§ 177*)—NOTICE TO AGENT.

Where an order for goods was given the seller's agent by the buyer's agent, the seller is chargeable with the information possessed by its agent as to the limitation in the authority of the buyer's agent to give such an order without having it confirmed by his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

2. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE —CROSS-EXAMINATION.

In an action by a seller for breach of a contract of sale negotiated by the seller's agent with the buyer's agent, if the testimony of the seller's agent did not show that in making the sale he had in mind information possessed by him as to the limitation of the authority of the buyer's agent to contract, it was prejudicial error to sustain an objection on cross-examination to a question to the seller's agent as to whether he had such information in mind at the time of the sale.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1048.*]

Appeal from Trial Term, New York County.

Action by Philip H. Gaspard and Harry H. Levy against the Fourteenth Street Store. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and MILLER, JJ.

Benjamin G. Paskus (Norman P. S. Schloss, on the brief), for appellant.

Otto G. Sommerich (Charles Trosk, on the brief), for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. This is an action on contract to recover the purchase price of a quantity of goods consisting of men's and boys' worsted suits which it is alleged the defendant after purchasing refused to accept or to pay for according to its agreement. The plaintiffs allege that the goods were purchased by the defendant on the 14th day of November, 1907, to be delivered during the month of March, 1908; and that defendant accepted delivery of part of the goods of the value of $888, but refused to accept the balance. The negotiations, which the plaintiffs claim resulted in the contract on which the action is based, were had on the part of the defendant by one Wolf, who was the buyer in its clothing department, and on behalf of the plaintiffs by one Rosenthal, who was a salesman in their employ. It appears that the plaintiff Levy took part in the negotiations to some extent, but the case was tried and submitted to the jury upon the theory that the contract was made in behalf of the plaintiffs by Rosenthal; and the argument of the learned counsel for the respondents in support of the recovery is based upon the theory that the order for the goods was taken by Rosenthal. The plaintiffs alleged that the contract was for the sale of a bill of goods amounting to $8,199.50; but the contract price of the goods which, on the plaintiffs' theory of the case, the defendant agreed to purchase, was only $4,619.50, and the case was tried as if that were the value of the goods stated in the complaint. The plaintiff delivered a bill of goods of this description amounting to $888 to the defendant on or about the 26th day of March, 1908, and it accepted and paid for the same. The plaintiffs claim that this was part of the order for goods of the aggregate agreed value of $4,619.50 placed with them by Wolf on the 14th of November preceding; but the defendant claims that it was a separate purchase made by Wolf for it the day before or the day the goods were delivered and confirmed by it the day the selections were made by Wolf. The balance of the goods which plaintiffs claim the defendant agreed to purchase were subsequently tendered, and, owing to negotiations with respect to the delivery thereof or to the liability of the defendant to take the goods, the plaintiffs held them until such negotiations were broken off in the month of June thereafter, when the defendant finally declined to accept them. At that time the market value of the goods undelivered was only $2,615; but the contract price thereof as claimed by plaintiffs was $3,731.50.

The court instructed the jury that, if the plaintiffs were entitled to recover, the measure of their damages would be the difference between the market value of this balance of goods which the defendant refused to accept and the contract price thereof, which would be $1,116.50. The verdict was for that amount. There was a sharp conflict in the evidence with respect to whether or not the defendant's representative, Wolf, assumed to place a definite unconditional order with the plaintiffs in November, 1907, as claimed. The plaintiff Levy testified that an unconditional order was at that time given for the amount of goods to be delivered in March thereafter, and his testimony is to some extent, although not fully, corroborated by the salesman Rosenthal; but Wolf testified that no order was placed at that

time, and, in substance, that the negotiations were limited to a discussion of the kind, style, quality, and quantity of goods in the lines carried or manufactured by plaintiffs that the defendant would likely require for the spring trade. On the 28th day of September 1907, Wolf had given the plaintiffs an "open order" in writing for a number of suits at specified prices with a proviso that the "styles and sizes" were to be given later; but, as we understand the evidence, it was not shown that there was any connection between that order and the order claimed to have been given on the 14th day of November thereafter. It was not clearly shown that there was ever any delivery of goods by plaintiffs to defendant other than the single delivery in March, 1908.

It appears that the authority of Wolf to purchase clothing for the defendant was limited to negotiating contracts subject to confirmation by the defendant's manager, Goldman, or an officer of defendant. The plaintiffs had no actual knowledge of the limitation of Wolf's authority, but their salesman Rosenthal had notice and knowledge of such limitation. He acquired this knowledge in business transactions with the defendant during a number of years immediately before he entered the employ of the plaintiffs and while he was representing another employer. He had been in the employ of plaintiffs about six months on the 14th of November, 1907. It further appears by the testimony of Wolf that this limitation of his authority was alluded to by him in his conversation with Rosenthal on November 14, 1907, which the plaintiffs claim resulted in placing the order, and that he distinctly informed Rosenthal that the selections made by him could not be considered an order for the purchase of the goods until confirmed by the defendant. This is not controverted by Rosenthal. It does not appear whether the suits were manufactured at the time of the negotiations in November or were to be manufactured thereafter; but it is clearly to be inferred they were of lines carried or manufactured by plaintiffs. Evidently with a view to bringing the case clearly within the rule that a principal is chargeable with notice to or knowledge acquired by his agent outside of his employment and while acting for another principal, provided the agent has such notice or knowledge in mind at the time of transacting the particular business for his new employer (Constant v. University of Rochester, 111 N. Y. 604, 19 N. E. 631, 2 L. R. A. 734, 7 Am. St. Rep. 769, and kindred authorities), counsel for the defendant asked Rosenthal, who was called as a witness for plaintiffs, whether in his dealings with Mr. Wolf in connection with the business of plaintiffs he had in mind that any selection of goods by Wolf would not be received by defendant unless the selection were confirmed by it. On objection by counsel for plaintiffs this evidence was excluded, and an exception was duly taken.

We are of opinion that the fair construction of the testimony of Rosenthal is that he did have this limitation of Wolf's authority in mind at the time he was negotiating this order with him, and there were admissions in the testimony of the plaintiff Levy tending to show that he in some manner acquired knowledge that it was necessary

to receive from the defendant a confirmation of orders for goods placed by Wolf before shipping the goods. It is claimed on the part of the plaintiffs that Levy acquired this knowledge after the contract was made, and by a confirmation order for the goods delivered in March, which they received the day after Wolf selected and directed the shipment of those goods. That confirmation order contained a printed notice as follows:

"This order is not valid unless confirmed by an officer of the corporation."

And it contained such a confirmation in writing. The plaintiffs, however, were chargeable with the information possessed by their salesman Rosenthal, and which he had in mind at the time of negotiating the contract, concerning the authority of Wolf; and if the testimony of Rosenthal, to which reference has been made, does not show that he had this information with respect to the limitation of Wolf's authority in mind at the time the contract was negotiated, it was prejudicial error to exclude the evidence offered to show that he did have that knowledge in mind then. The learned court in submitting the case to the jury left it for the jury to determine as a question of fact whether Rosenthal knew that Wolf was not authorized to give the order which the plaintiffs claimed he gave, and instructed the jury that if Rosenthal had such knowledge then, plaintiffs could not recover. Under the instructions given to the jury, there could be no recovery by the plaintiffs if Rosenthal knew that Wolf was not authorized to give an unconditional order which required no confirmation by the defendant or any one else in its behalf.

We are of opinion that if there be any evidence in the record to sustain the determination of the jury that Rosenthal was without such knowledge, which is extremely doubtful, the determination in that regard is, at least, against the weight of the evidence.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.