JOHN CRAGIE et al., Respondents, *v.* STERLING G. HADLEY, as Receiver, etc., Appellant.

A corporation may, in a legal sense, be guilty of a fraud, and the rule that one who has been induced by the fraud of another, under the guise of a contract, to part with his property, may, upon discovery of the fraud, rescind the contract and recover the property, unless it has come to the possession of a *bona fide* holder, applies as well when a corporation as when a natural person is the wrong-doer.

Notice to an agent of a bank intrusted with the management of its business is notice to the corporation in transactions conducted by such agent acting for the corporation, in the scope of his authority, whether the knowledge of the agent was acquired in the course of the particular dealing or on some prior occasion.

Plaintiffs deposited, in the usual course of business, certain drafts with a national bank, which were credited to them on the books of the bank and in their pass-book. The bank was at the time irretrievably insolvent, and its drafts had gone to protest the day before; of this its president, to whom was intrusted its entire control and management, had full knowledge, and presumably its other officers and agents. The bank kept open until the usual hour of closing on the day of the deposit, but did not open its door thereafter, and went into the hands of a receiver. In an action to recover the deposit, *held,* that in permitting plaintiffs to make it in reliance upon the supposed solvency of the bank a gross fraud was practiced upon the plaintiffs, and they were entitled to reclaim the drafts or their proceeds. Also, that the right of plaintiffs to make the reclamation was not precluded by the provisions of the U. S. R. S. (§§ 5234, 5242), forbidding all preferential payments or transfers by an insolvent bank, and providing for a ratable distribution of its assets, as plaintiffs did not claim under a transfer from the bank but under their original title; that their relation as creditors terminated when they elected to rescind the contract implied when the deposit was, and they were seeking simply to reclaim their own property; and that neither the receiver nor any creditor of the bank had any equity to have such property applied in payment of its obligations.

(Argued April 15, 1885 ; decided May 5, 1885.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, entered upon an order made April 19, 1884, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought originally against the members of the firm of Brown Brothers & Co., to recover the proceeds of certain drafts deposited by plaintiffs with the First National Bank of Buffalo, and sent by it to said firm for collection, and which were collected by it.

By order of interpleader the original defendants were discharged upon payment of the money into court, and the receiver of said bank substituted as defendant.

*Richard Crowley* for appellant. The act of Congress prescribes the conditions upon which national banks shall be created, the powers they shall possess, and the consequences of their failure to meet their obligations, and persons dealing with these institutions can only acquire and enforce rights against them under the limitations there designated. (*Nat. Bk.* v. *Colby*, 21 Wall. 609.) The relation of banker and customer in their pecuniary dealings is that of creditor and debtor, and where a bank receives deposits, unless there are stipulations to the contrary, they belong to the bank and become a part of its general fund. (*Bank of the Republic* v. *Millard*, 10 Wall. 152; *Met. Nat. Bk.* v. *Lloyd*, 25 Hun, 101; *Mahaiuie Bk.* v. *Peck*, 127 Mass. 298; *Matter of Franklin Bk.*, 1 Paige, 249; 2 Comst. 380; *Stuyvesant Bk.* v. *Nat. Bk.*, 7 Lans. 197; Note to Paley on Agency, 233, 234; Story on Agency [4th ed.], 288; *Van Namee* v. *Bk. of Troy*, 8 Barb. 312; *In re Bk. of Madison*, 5 Biss. 515; Morse on Banking, 380; *Nat. Bk.* v. *Burkhardt*, 100 U. S. 686; *Oddie* v. *Nat. City Bk.*, 45 N. Y. 735.) Although the bank was insolvent when the drafts were received, deposited and credited, unless the knowledge of its president is notice to, and the knowledge of the bank, it cannot be held that it had knowledge of such insolvency, or was guilty of any fraud toward the respondents. (*Dutcher* v. *F. & T. Nat. Bk.*, 59 N. Y. 5; *Balbach* v. *Frelinghuysen*, 15 Fed. Rep. 675.) The other creditors of the bank were innocent third parties, and had acquired an interest in the deposit from the moment it was made. (*Donaldson* v. *Farwell*, 93 U. S. 631.)

*Sherman S. Rogers* for respondents. The financial condition and insolvency of the bank being known to it and to its officers and agents, at the time the drafts in question were deposited, it was a fraud on the part of the bank to receive them on deposit. (*Holden* v. *N. Y. & E. Bk.*, 72 N. Y. 286; Story on Agency, §§ 140 *b*, 140 *c ; Bridge Co.* v. *Bank*, 3 N. Y. 156; *Fulton Bk.* v. *Coal Co.*, 4 Paige, 135; *Bank of U. S.* v. *Davies*, 2 Hill, 452; *Anonymous*, 67 N. Y. 598; *Chaffee* v. *Foot*, 2 Lans. 81; *Wright* v. *Brown*, 67 N. Y. 1; *Devoe* v. *Brandt*, 49 id. 462; *Johnson* v. *Monell*, 2 Keyes, 655; *Hennequin* v. *Naylor*, 24 N. Y. 139.) The bank's fraud entitled the plaintiffs to avoid the transfer of the drafts, and recover their proceeds in the hands of Brown Brothers & Co. (Pollock's Principles of Contracts, 506; Wharton on Contracts, § 282; *Donaldson* v. *Farwell*, 93 U. S. 631; *Kinney* v. *Kernan*, 49 N. Y. 164; Bigelow on Frauds, 403; *Brainard* v. *Campbell*, 58 N. Y. 73; *Loud* v. *Green*, 15 M. & W. 216; *Hammond* v. *Pennock*, 61 N. Y. 145; *Abbott* v. *Barry*, 2 Brod. & Bing. 186; *Van Allen* v. *Bank*, 52 N. Y. 1; *Newton* v. *Porter*, 69 id. 133; *West of England Bk.*, L. R., 11 Ch. Div. 772.) The checks drawn against their account with the bank by the plaintiffs on April 13, were not an affirmance of the transaction. (*Van Allen* v. *Bank*, 52 N. Y. 11; Morse on Banking, 32.)

ANDREWS, J. The general doctrine that upon a deposit being made by a customer, in a bank, in the ordinary course of business, of money, or of drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, is not open to question. (*Commercial Bank of Albany* v. *Hughes*, 17 Wend. 94; *Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530.) The transaction in legal effect is a transfer of the money, or drafts or checks, as the case may be, by the customer to the bank, upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor. The bank acquires title to the money,

drafts, or checks, on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business. / The further rule that one who has been induced to part with his property by the fraud of another, under guise of a contract, may, upon discovery of the fraud, rescind the contract, and reclaim the property, unless it has come to the possession of a *bona fide* holder, is equally well settled, and does not at all depend upon the character of the wrong-doer, whether a corporation or natural person.

A corporation may be in a legal sense guilty of a fraud. As a merely legal entity it can have no will, and cannot act at all, but in its relations to the public it is represented by its officers and agents, and their fraud in the course of the corporate dealings, is in law the fraud of the corporation. There is more difficulty in establishing a fraud against a corporation, than against an individual. This arises from the difficulty in many cases of determining whether the fraud charged is imputable to the corporation. There may be knowledge of a fact by an agent of a corporation, which if brought home to the corporation itself, would create responsibility in a given case, but as to which, notice will not be imputed to the corporation merely from the fact that it was known by the agent. We need not enter into the distinctions upon this subject. But the general rule is well established that notice to an agent of a bank, or other corporation intrusted with the management of its business, or of a particular branch of its business, is notice to the corporation, in transactions conducted by such agent, acting for the corporation, within the scope of his authority, whether the knowledge of such agent was acquired in the course of the particular dealing, or on some prior occasion. (*Holden* v. *N. Y. & Erie Bank*, 72 N. Y. 286 ; *Bank of U. S.* v. *Davis*, 2 Hill, 452.) The drafts for the proceeds of which this action is brought, amounting to $14,793.37, were deposited by the plaintiffs in the usual course of business, with the First National Bank of Buffalo, between two and three o'clock in the afternoon of the 13th day of April, 1882, and were credited in the plaintiffs' pass-book and on the books of the bank to their ac-

count.   The bank closed its doors at the usual hour on that day and never opened them afterward.   It turned out that the bank was irretrievably insolvent, owing debts to the amount of $1,300,000, with assets not exceeding in value forty per cent of its debts, and had been so insolvent for months before its failure.   It does not admit of question that the condition of the bank was such that if it was known to its officers or agents charged with the direction and management of its affairs, a gross fraud was perpetrated on the plaintiffs in permitting them, in reliance upon its supposed solvency, to make the deposit in question.   The bank was not only irretrievably insolvent, but it had apparently given up the struggle to maintain its credit before the deposit was made.   Its drafts had gone to protest on the 12th, and it was manifest that a condition of open insolvency must immediately ensue.   The acceptance of the deposit under those circumstances constituted such a fraud as entitled the plaintiffs to reclaim the drafts or their proceeds. (See *Anonymous Case*, 67 N. Y. 598.)   The presumption that the managing officers and agents of the bank had notice of its condition, arises from the circumstances.   They could not have been ignorant without imputing to them gross inattention to its affairs.   It was, moreover, admitted on the trial that the entire control and management of the bank was in fact intrusted to and conducted by its president, and it is clearly shown that he was familiar with the desperate condition of the bank at the time of, and for many weeks before the deposit was made.

It is claimed that the right of the plaintiffs to reclaim the drafts or their proceeds, is precluded by sections 5234 and 5242 of the Revised Statutes of the United States, which forbid all preferential payments or transfers by an insolvent bank, and provide for a ratable distribution of its assets among its creditors.   The answer is that the plaintiffs do not claim under a transfer from the bank, but under their original title. They are not seeking to enforce any right as creditors of the bank, but to reclaim their own property obtained by fraud. Their relation as creditors terminated when they elected to rescind the contract.   The right to a restoration in such case

may be defeated by the acts or acquiescence of the defrauded party, or because the property has lost its identity and cannot be traced, or other persons have innocently acquired interests in ignorance of the fraud. But neither the creditor of an insolvent bank, nor its assignee in bankruptcy, has any equity to have the plaintiffs' property applied in payment of the obligations of the bank, and the statute does not sanction so palpable an injustice.

The judgment should be affirmed.

All concur.

Judgment affirmed.