BANK OF SYRACUSE *v.* WISCONSIN MARINE & FIRE INS. CO. BANK.

*(Supreme Court, General Term, Fourth Department.* February, 1891.)

BANKS AND BANKING—COLLECTIONS—BONA FIDE OWNERS.

Plaintiff bank entered into an agreement with the F. Bank by which each was to make collections for the other, and remit every 10 days. After the F. Bank had become insolvent, but before it suspended, it received a check from plaintiff for the purpose of defrauding plaintiff. The F. Bank then sent the check in question to defendant, its collecting agent. Defendant collected the check, retained the proceeds, and credited the account of the F. Bank, which was then indebted to defendant in a sum greater than the amount of the check. *Held,* that defendant was not a *bona fide* owner of the check for value, and was liable to plaintiff for the amount thereof.

Appeal from special term, Onondago county.

Action by the Bank of Syracuse against the Wisconsin Marine & Fire Insurance Company Bank. From a judgment entered in favor of plaintiff for $363.31, with interest from June 15, 1887, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*C. W. Andrews,* for appellant. *J. Wm. Wilson,* for respondent.

MERWIN, J.  The facts of this case are substantially as follows: The plaintiff is a state bank, doing business at Syracuse.  The defendant is a banking association, organized under the laws of the state of Wisconsin, and doing business at Milwaukee, in that state.  The Fidelity National Bank of Cincinnati was, on the 20th June, 1887, and had been for more than a year previous, a banking association duly organized under the national bank act, and doing business at Cincinnati, Ohio.  It suspended business on the 20th June, 1887, and on the next day it was taken possession of by the national authorities, and a receiver afterwards appointed, and its franchises forfeited.  About November, 1886, there were negotiations between the plaintiff and the Fidelity Bank with reference to collections to be made for each by the other, which resulted in an agreement between them to the effect that the plaintiff would make collections in Syracuse and vicinity of paper held by the Fidelity Bank, and the latter would make collections in the United States west of Pennsylvania of paper held by the plaintiff, and that each would remit the total amount so collected to the other every 10 days.  The course of the business under this arrangement, down to the time of the suspension of the Fidelity Bank, was as follows:  Each bank opened an account with the other, debtor and credit in form, in which each was credited with all paper received for collection from the other at its par value, and, upon its receipt, the one receiving proceeded to make the collection, and at the end of each 10 days the amount collected up to that time was remitted by draft on New York, and the amounts of the remittances so made were charged in the account.  These remittances were made the 1st, 11th, and 21st of each month.  No specific collection was thus sent, but the aggregate of collections made up to the time of each remittance was forwarded.  The moneys so collected were mingled indiscriminately with the other funds of the bank.  The plaintiff, during the continuance of this business, sent to the Fidelity Bank for collection several hundred items, and upon its part made collections for the Fidelity Bank, and conducted business in the same manner.  On the 11th June, 1887, the plaintiff was the owner of a check for $363.31, dated at Milwaukee, June 8, 1887, drawn by J. G. Wightman on Marshall & Illsey, to order of and indorsed by W. S. Peck, Bro. & Co., and duly transferred for value to plaintiff.  On the 11th June, the plaintiff indorsed the check, "For collection and remittance of proceeds to the Bank of Syracuse, Syracuse, N. Y.  F. C. EDDY, Cashier,"—and mailed it to the Fidelity Bank, by which it was received on the 13th June, 1887.  Upon that day the Fidelity Bank indorsed the check, "For collection for account of the Fidelity National Bank, June 13, 1887, Cin., O.  AMMI BALDWIN, Cash.,"—and forwarded it by mail to the defendant, by which it was received on the 15th June, 1887, and its amount collected on the same day.  The defendant was collecting agent at Milwaukee for the Fidelity Bank, and the check was credited by the defendant to the Fidelity Bank in its account with it on receipt, pursuant to an arrangement that negotiable paper forwarded by one to the other for collection was to be treated as cash, and credited by each bank to the other when received.  The defendant on the same day notified the Fidelity Bank that the check had been collected, and the amount credited to its account, and this notification was received by the Fidelity Bank on June 17, 1887.  Upon and before the 15th June, 1887, and from that time till the failure of the Fidelity Bank, it owed the defendant considerably more than the amount of the check.  The defendant has not remitted the proceeds of the check to the Fidelity Bank or to its receiver or to plaintiff.  No advance was made by defendant on the check.  On the 24th August, 1887, the plaintiff demanded of the defendant the check or the money, and, this demand not being complied with, this suit was commenced.  From the 1st June, 1887, to its suspension, the Fidelity Bank was insolvent; and its assets on the 1st June, and until its dissolution, were about $3,000,000, and its liabilities during the same time were about $6,100,000.  E. L. Harper was its vice-president and general manager, and directed its af-

fairs, and the condition of the bank was well known to him; and he, between the 1st and 20th June, 1887, converted over $900,000 of the moneys of the bank to his own use. None of the facts as to the condition of the Fidelity Bank and the conversion of its assets were known to either of the parties hereto prior to June 21, 1887. It is found by the court below that the Fidelity Bank at the time it received the check in question was insolvent, and well knew it was insolvent, and received the check with the fraudulent intent and purpose of depriving the plaintiff of the same and its proceeds. This finding is challenged by the appellant, but we think it is sustained by the evidence. *Cragie* v. *Hadley*, 99 N.Y. 131, 1 N. E. Rep. 537; *Anon.*, 67 N.Y. 598. The court below decided as matter of law that the title to the check remained in the plaintiff, and the Fidelity Bank held it as collecting agent; that, under the agreements, the proceeds upon receipt would have become the property of the defendant but for the fraud; that, by reason of the fraud, the defendant, not being a *bona fide* owner for value, acquired no title to the proceeds; and that plaintiff was the owner of the proceeds.

Assuming, as I think we must, that the plaintiff by reason of the fraud had the right to rescind the contractual relation between it and the Fidelity Bank and follow its property, the only question is whether the defendant, by reason of the application of the moneys on a precedent debt, is such a holder for value that it is not liable to plaintiff. The claim of the defendant is that the case is analogous to the case of payment out of money obtained by fraud, when a party who receives it in good faith, and in the ordinary course of business, upon an antecedent debt, will be protected. *Stephens* v. *Board*, 79 N.Y. 183. That case, however, recognizes the principle that an antecedent debt is not such a consideration as will cut off the equities of third parties in respect to negotiable securities obtained by fraud. Here the property obtained from plaintiff, and that reached defendant's hands, was a negotiable security. The defendant is presumed to have known from the restrictive indorsement that it belonged to the plaintiff. Had the plaintiff discovered the fraud in time to have reached the defendant before the payment of the check, there would be no question about the plaintiff's ownership. Does the fact of payment, no other act intervening, change the situation? The check was credited by defendant to the Fidelity Bank on its receipt. It obtained no title by that act. The defendant was the agent of the Fidelity Bank, and had nc better title to the check or the proceeds than its principal had. The principal had no title to either by reason of the fraud. In *McBride* v. *Bank*, 26 N. Y. 450, it is said: "A bank receiving from another notes for collection obtains no better title to them or the proceeds than the remitting bank had, unless it becomes a purchaser for value without notice of any defect of title. It is not a purchaser for value by reason of its having a balance against the remitting bank for which it had refrained from drawing, in reliance upon a course of dealing between the banks to collect notes for each other, each keeping an open account of such collections, treating all the paper sent for collection as the property of the other, and drawing for balances at pleasure." We think the court below did not err in holding the defendant liable. Interest was directed from June 15, 1887. It should have been only from the time of the demand, August 24, 1887. In this respect the judgment should be modified. This, however, is not material enough to affect the question of costs. Judgment modified by striking out the interest allowed from June 15, 1887, to August 24, 1887, and, as modified, affirmed, with costs. All concur.