HUGH J. GRANT, as Receiver of the St. Nicholas Bank, Plaintiff, v. PATRICK J. WALSH, Defendant.

*Deposit of a check in a bank — title thereto — fraudulent acceptance thereof by the bank — bona fide purchaser thereof for value — request for the direction of a verdict — effect thereof — when a request to go to the jury is too late.*

When a person indorses a check for deposit to his account and delivers it to a bank, with a view of drawing against it, according to his usual custom, the title to the check immediately vests in and the check becomes the property of the bank, which can confer title thereto upon its transferee.

Where a bank is irretrievably insolvent, and it is manifest to its officers that a condition of open insolvency must immediately ensue, the acceptance by it of a deposit constitutes a fraud, as to the depositor, and entitles him to reclaim from the bank the check deposited by him, or the proceeds thereof, but when the check so deposited has been turned over by the bank to a *bona fide* purchaser thereof for value, without notice of the fraud, such purchaser is entitled to receive and hold the amount thereof notwithstanding the insolvency of such bank.

The effect of a request by the respective counsel of both the parties to an action for the direction of a verdict is to confer upon the court the authority to pass upon any questions of fact involved.

After the request by both parties for the direction of a verdict, and the direction of a verdict by the court in favor of one of the parties, it is too late for the party against whom the verdict is directed to ask the court to submit certain questions of fact to the jury.

MOTION by the defendant, Patrick J. Walsh, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury in favor of the plaintiff, rendered by direction of the court after a trial at the New York Circuit on the 19th day of April, 1894.

*Albridge C. Smith,* for the plaintiff.

*Thomas O. Ennever,* for the defendant.

PARKER, J.:

August 8, 1893, the defendant, who for many years had been a regular depositor in the Madison Square Bank, drew his check for $1,000 to his own order on the Farmers' Loan and Trust Company, indorsed it "for deposit," and delivered it to the bank.

Later in the day the Madison Square Bank sent the check to the St. Nicholas Bank, with which it had a clearance contract binding it to keep constantly on deposit with the latter $50,000, on which the St. Nicholas Bank should pay no interest as part of the consideration for the clearance contract. This contract could be terminated on twenty-four hours' notice, but it obligated the St. Nicholas Bank to make clearance for the Madison Square Bank for the day succeeding that on which the notice was given. Such a notice was given on the eighth of August by the St. Nicholas Bank, but, as it was compelled to make clearance for the day following, the result was that on that day it paid for the Madison Square Bank $372,806.75, although it had received no deposit from the Madison Square Bank after the eighth of August. This amount largely exceeded the deposits of the Madison Square Bank with it, but under its contract with the Madison Square Bank and the clearing house, it was obliged to clear for that bank for that day, whether it held any of its funds or not.

The condition of the account between the Madison Square Bank and the St. Nicholas Bank on the eighth of August was as follows: After the clearances of the morning of August eighth were made, the Madison Square Bank owed the St. Nicholas Bank $50,006.62 over and above the $50,000 deposit, which, under its contract, the Madison Square Bank was bound to keep continually on deposit. Its actual indebtedness then was, on account of clearances made by the St. Nicholas Bank and its contract obligation to it, $100,006.62. After the clearances of the eighth of August, the Madison Square Bank made deposits with the St. Nicholas Bank aggregating $78,087.24. This included the check of $1,000, which is now the subject of controversy. These deposits repaid the overdraft, but left $21,919.38 still due to the St. Nicholas Bank on account of its

clearance house contract, under which it was compelled, on the day following, to pay for the St. Nicholas Bank over $370,000.

At the close of business on August eighth the Madison Square Bank closed its doors, and shortly thereafter, in an action brought by the Attorney-General, receivers were duly appointed. When defendant ascertained the fate of the bank he at once stopped payment of the check, whereupon the St. Nicholas Bank commenced this action to recover thereon. Subsequently this plaintiff was substituted in place of the St. Nicholas Bank. The answer set up that at the time when the deposit was made the Madison Square Bank was insolvent, of which fact its officers, agents and employees had full knowledge, and that its acceptance of the check without notifying him of such insolvency constituted a fraud upon the defendant, and further, that such insolvency and fraud were known to the St. Nicholas Bank at the time it received defendant's check, and gave the Madison Square Bank credit for it.

As the case stood when plaintiff rested, his right to recover on the check had been made out. When defendant indorsed his check for deposit to his account, and delivered it to the Madison Square Bank, that he might draw against it, according to his usual custom, the title to the check immediately vested in, and became the property of the bank, which title it could and did confer upon its transferee, the St. Nicholas Bank. (*Metropolitan Nat. Bank* v. *Lloyd*, 90 N. Y. 530; *Cragie* v. *Hadley*, 99 id. 131, 133; *People* v. *St. Nicholas Bank*, 77 Hun, 159.)

The evidence, to which we have sufficiently referred, shows that the St. Nicholas Bank, upon such transfer, became a *bona fide* holder of the check for value.

This brings us to the affirmative defense pleaded, and which the defendant sought to establish on the trial. If it were a fact that the Madison Square Bank was irretrievably insolvent, and it was manifest to its officers that a condition of open insolvency must immediately ensue, the acceptance of the deposit made by the defendant constituted such a fraud as entitled its owner to reclaim from such bank the check or its proceeds. (*Cragie* v. *Hadley, supra.*)

It may be doubted whether defendant met the burden of proof resting upon him, to establish the insolvency of the bank on August 8, 1893. (*People* v. *St. Nicholas Bank, supra.*)

And the evidence wholly fails to show that the officers, agents and employees of the bank knew that the bank was irretrievably insolvent, and that the struggle to maintain its credit must be given up.

But defendant's evidence, offered for the purpose of showing such knowledge on the part of the officers of the bank, was excluded by the court, to which ruling an exception was taken, so we shall assume in the further discussion that the evidence established that fact, for, if proof of the facts would have made good defendant's defense, it would follow that because of its exclusion a new trial should result. It was not shown that the St. Nicholas Bank, at the time of the transfer of defendant's check to it, had any knowledge whatever of the insolvency of the Madison Square Bank and of the fraud which the bank perpetrated on the defendant.

Proof of the fraud of the Madison Square Bank, therefore, at most, burdened this plaintiff with the necessity of proving that the St. Nicholas Bank obtained the check in good faith and for value without notice of the fraud. ( *Vosburgh* v. *Diefendorf*, 119 N. Y. 357.)

If the fact be that the evidence upon this subject presented a question for the jury, it is doubtful whether the appellant is in a position to urge that the court erred in directing a verdict. At the close of the testimony plaintiff's counsel asked the court to direct a verdict in plaintiff's favor. Defendant's counsel thereupon requested the court to direct a verdict in favor of the defendant. The effect of the request by counsel for both parties was to confer upon the court the authority to pass upon any questions of fact which the record presented.

The court directed a verdict for the plaintiff, defendant excepting. After the court had rendered its decision, as the request made by counsel authorized it to do, the defendant asked the court to submit certain questions of fact to the jury.

This request came too late, but if it were in time, we do not think the court was in error in refusing it.

It does not appear from the evidence, affirmatively and conclusively, that the St. Nicholas Bank obtained the check in the regular course of business, and gave the Madison Square Bank credit for it, as by such course of business and its contract it was bound to do. That this was done in good faith and without notice on the part of

the St. Nicholas Bank of the insolvency of the Madison Square Bank, is shown by the testimony of William J. Gardiner, the cashier of the St. Nicholas Bank. Inquiry was made of him as to the reason for the notice given by the St. Nicholas Bank on the eighth of August that it would no longer act as the clearing agent for the Madison Square Bank. He said: "We gave notice that the St. Nicholas Bank would not clear any longer for the Madison Square Bank, because they had drawn against the balance that they agreed to keep there of $50,000, and had failed to make it good. * * * We did not do that because we considered the Madison Square Bank insolvent. I hadn't heard rumors to that effect that they were insolvent; never heard a word about it. I am sure of it."

The exceptions should be overruled, and judgment directed in favor of the plaintiff, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Exceptions overruled and judgment ordered for plaintiff, with costs.