## FISHER v. UNITED STATES NAT. BANK.

(Circuit Court of Appeals, Second Circuit.　December 3, 1894.)

No. 36.

FALSE REPRESENTATIONS—SOLVENCY OF BANK.

K., the president of the S. bank, in order to induce the U. bank to discount certain paper, told the president of that bank that the S. bank was in good condition, whereas, at the time, the S. bank was hopelessly insolvent, in consequence of the malversation of K. himself. *Held*, that such misrepresentation constituted a fraud upon the U. bank, and entitled it to recover back from the S. bank the proceeds of the paper discounted upon the faith of such misrepresentation.

In error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Benjamin F. Fisher, as receiver of the Spring Garden National Bank, against the United States National Bank, to recover a balance of deposit. Judgment was rendered in the circuit court in favor of the defendant, upon a counterclaim, in the sum of $24.042.59, with interest and costs. Plaintiff brings error.

Silas W. Pettit, for plaintiff in error.

John Hotman, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The Spring Garden National Bank of Philadelphia was taken possession of by the bank examiner, by direction of the comptroller of the currency, on May 8, 1891, it being then solvent. The plaintiff in error was duly appointed its receiver. Among the assets of the Spring Garden National Bank, the receiver found upon its books an account of the United States National Bank of New York, which, as kept by the Spring Garden Bank, showed a balance due it by the United States National Bank of $27,530.26, which sum this action was brought to recover. Upon the trial it appeared that $25,000 of the above sum was a credit upon special account, and it was excluded from the consideration of the jury, because not sufficiently averred in the pleadings. No question with regard to it is raised under this writ of error. As to the remaining sum of $2,530.26, the evidence showed that at the close of business on May 8, 1891, the balance in favor of the Spring Garden Bank was $2,530.26, as shown by the books of the defendant. It furthermore appeared that this balance was the result of a discount made on March 2, 1891, by defendant, for the Spring Garden Bank, of some 19 promissory notes, amounting on their face to $44,322.25. None of these had matured on that day, but subsequent thereto, and prior to the time of the trial, there had been collected on these notes the sum of $17,772.35; and it appeared that the bank held, uncollected and apparently uncollectible, the remainder of the said notes. The Spring Garden Bank had opened an account with the defendant in October, 1890, and these particular notes were offered for dis-

count on February 28, 1891. It was the contention of the defendant that the Spring Garden Bank was insolvent for five or six years prior to its seizure by the bank examiner; that that fact was well known to its officers; and that they concealed it from the defendant when the account was opened and the notes were discounted, with the intent to defraud the defendant, which discounted the notes, relying upon the solvency of the Spring Garden Bank. At the close of the case, counsel for plaintiff in error expressly waived his right to go to the jury, and stated that he left it to the court to pass upon the question whether the defendant was thus induced to discount the notes for the Spring Garden Bank. The court then ruled that the money obtained from the discounts, and which was then to the credit of the Spring Garden Bank on the books of the defendant bank, was obtained by fraud, and, upon the defendant's counterclaim, directed a verdict for defendant, against the receiver, for the balance of the sum thus loaned to the Spring Garden Bank, after deducting the amount collected on the notes, and the balance on deposit account in the hands of defendant on May 8, 1891.

There are eight specifications of error, but the only point argued upon the brief filed in this court, and therefore the only one which need be considered, is whether there was sufficient evidence to show a false representation as to the condition of the Spring Garden Bank, upon which defendant relied. The law of the case is sufficiently set forth in Railway Co. v. Johnston, 133 U. S. 576, 10 Sup. Ct. 390:

"This bank was hopelessly insolvent when the deposit was made,—made so, apparently, by the operations of a firm of which the president of the bank was a member. The knowledge of the president was the knowledge of the bank. Martin v. Webb, 110 U. S. 7, 15, 3 Sup. Ct. 428; Bank v. Walker, 130 U. S. 267, 9 Sup. Ct. 519; Cragie v. Hadley, 99 N. Y. 131. 1 N. E. 537. In the latter case it was held that the acceptance of a deposit by a bank irretrievably insolvent constituted such a fraud as entitled the depositor to reclaim his drafts or their proceeds. And the Anonymous Case, 67 N. Y. 598, was approved, where a draft was purchased from the defendants, who were bankers, when they were hopelessly insolvent, to their knowledge; and the court held the defendants guilty of fraud in contracting the debt, and said their conduct was not like that of a trader 'who has become embarrassed and insolvent, and yet has reasonable hopes that by continuing in business he may retrieve his fortunes. In such a case he may buy goods on credit, making no false representations, without the necessary imputation of dishonesty. Nichols v. Pinner, 18 N. Y. 295; Brown v. Montgomery, 20 N. Y. 287; Johnson v. Moneil, 41 N. Y. 655; Chaffee v. Fort, 2 Lans. 81. But it is believed that no case can be found in the books, holding that a trader who was hopelessly insolvent, knew that he could not pay his debts and that he must fail in business, and thus disappoint his creditors, could honestly take advantage of a credit induced by his apparent prosperity, and thus obtain property which he had every reason to believe he could never pay for. In such a case he does an act, the necessary result of which will be to cheat and defraud another, and the intention to cheat will be inferred.' And it was decided that 'in case of bankers, where greater confidence is asked and reposed, and where dishonest dealings may cause widespread disaster, a more rigid responsibility for good faith and honest dealings will be enforced than in the case of merchants and other traders,' and that 'a banker who is, to his own knowledge, hopelessly insolvent, cannot honestly continue his business and receive the money of his customers; and, although having no actual intent to cheat and defraud a particular

customer, he will be held to have intended the inevitable consequences of his act, i. e. to cheat and defraud all persons whose money he receives, and whom he fails to pay before he is compelled to stop business.' "

It will be remembered that the plaintiff did not ask to go to the jury upon the question of fraud, but was "perfectly willing to leave it to the court"; and, where questions of fact are left to the trial court, its findings are binding in the appellate court, "if there be any evidence to support them." Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837.

In the case at bar, Kennedy, the president of the Spring Garden Bank, made the arrangements for rediscount of its paper with the president of the United States National Bank in October. At that time he stated that his bank "was in good condition, and was only temporarily pressed, by reason of the close money times, and the Baring troubles coming on.". The evidence shows, not only that the bank was insolvent for five or six years before it closed its doors, but that at the very time this statement was made its capital and surplus were all gone, and possibly 25 per cent. of its deposit; and this condition of affairs had been brought about by the malversation of Kennedy himself, who had misapplied the funds of the bank to his own use, and made false returns to the comptroller of the currency, and is now serving a term of imprisonment, upon conviction for his crime. Under these circumstances, it will not do to say that there was a reasonable hope of the bank's retrieving its fortunes, upon the theory that if Kennedy was solvent he would probably repay to the bank the sum of which he had plundered it. The decision of the circuit court is within the authority of Railroad Co. v. Johnston, supra, and should be affirmed. The objection that the original notes discounted were not returned or tendered seems not to have been raised below. Judgment affirmed.