. (21 Misc. Rep. 94.)

## STAPLETON v. ODELL et al.

(Supreme Court, Special Term, Kings County. July, 1897.)

1. BANKS AND BANKING—INSOLVENCY—RIGHTS OF DEPOSITORS.
   One may reclaim property deposited in a bank which is guilty of fraud in that he who received the deposit knew the bank to be then insolvent, unless such deposit is in the hands of a bona fide holder.

2. SAME—KNOWLEDGE OF INSOLVENCY—EVIDENCE.
   In view of Pen. Code, § 601, providing that one who receives a deposit for a bank, which he knows is insolvent, is guilty of a misdemeanor, proof merely of the insolvency of a bank when a deposit was made does not justify an inference that the officers and directors knew of such insolvency, so as to permit the depositor to recover back the deposit as for fraud of the bank.

3. SAME.
   Within three months before a bank was closed by the bank superintendent, its stock was sold largely above par, and within one month thereof the superintendent's examination showed a large surplus. On the day of such closing all the directors had their usual balance on deposit, and held as much stock as ever, and they testified that the closing was unexpected, and that they supposed the bank was solvent, and the superintendent testified he thought the bank was solvent when he closed it. *Held*, that though the bank in fact was insolvent, its officers and directors were not shown to have any knowledge thereof.

Action by John Stapleton against Benjamin B. Odell, Jr., and another, as receivers of the Murray Hill Bank, to recover a deposit made by him the day before said bank suspended business by order of the state banking department. Complaint dismissed.

William C. Findlay and William E. Stewart, for plaintiff.
Mullin & Griffin, for defendants.

DICKEY, J.    Although the amount involved in this case is small,
the case is an important one, as many other depositors of the Murray
Hill Bank deposited money in the bank near the time of its final
closing by the state bank superintendent, and if this plaintiff is enti-
tled to recover the $310 deposited by him on August 10, 1896, so are
all the others in like situation, making, in the aggregate, a large
amount.    It seems to be now well settled that if a bank receives de-
posits of money, drafts, or checks after knowledge of its insolvency
by the officers or agents in charge thereof, the bank is, in a legal sense,
guilty of fraud.    While the effect of a deposit in a solvent bank is
to vest the title of the thing deposited in the bank upon the implied
contract that it shall repay the amount upon the checks of the de-
positor, yet, if the bank be chargeable with fraud in receiving the de-
posit, the depositor may, on discovering that fact, rescind the con-
tract, and reclaim the property, unless it has in the meantime passed
into the possession of a bona fide holder.    Breweries Co. v. Higgins,
79 Hun, 250, 29 N. Y. Supp. 416; Cragie v. Hadley, 99 N. Y. 131,
1 N. E. 537; Printing Co. v. Loomis, 45 Hun, 93; People v. St. Nich-
olas Bank, 77 Hun, 159, 28 N. Y. Supp. 407.
Pen. Code (section 601) provides:

"An officer, agent, teller or clerk of any bank, banking association or savings
bank, and every individual banker * * * who receives any deposits, knowing
that such bank or association or banker is insolvent, is guilty of a misdemeanor."

The plaintiff, in his complaint, not only alleges insolvency of the
bank on August 10, 1896, but also alleges it was insolvent to the
knowledge of the officers and directors thereof.    Counsel for the
plaintiff now contends that it was not essential for him to prove, or
the court to find, this knowledge on the part of the directors; that
they may be found guilty of fraud on the mere proof of insolvency,
and their knowledge of the bank's insolvency must be inferred from
the fact of the insolvency itself, as evidenced by the closing of the
bank by the state superintendent.    I have not been referred to any
authority sustaining this proposition.    On the contrary, the court
said, in People v. St. Nicholas Bank, 77 Hun, 159, 28 N. Y. Supp.
407:

"From the circumstance that the superintendent of banks properly closed a cer-
tain bank on a certain day no inference can be drawn of knowledge on the part
of the officers thereof of the bankrupt condition of the institution which would
make it a fraud for them to receive deposits."

All the cases in the books unite in the determination that in cases
of this character, where there is an attempt to rescind the contract
on account of fraud, guilty knowledge must be shown on part of the
officers.

In Atkinson v. Printing Co., 114 N. Y. 168, 21 N. E. 178, the
bank was, to the knowledge of its president and cashier, insolvent;
hopelessly so.    In Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, the
bank was irretrievably insolvent.    Its drafts had gone to protest the
day before.    Of this the president, to whom was intrusted its entire

control and management, had full knowledge, and presumably its other officers and agents, and the bank had apparently given up the struggle to maintain its credit before the deposit was made. So, in all other cases where recovery was confirmed; because the fraud of a corporation must necessarily be the fraud of its agent. As the court says, in Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537:

"A corporation may be, in a legal sense, guilty of a fraud. As a merely legal entity it can have no will, and cannot act at all, but in its relations to the public it is represented by its officers and agents, and their fraud in the course of the corporate dealings is in law the fraud of the corporation."

In the case of Printing Co. v. Loomis, supra, the case of fraud on the part of the banker is well stated:

"If he is in an irretrievable condition of insolvency, so that he knows, or has reason to suppose, that he cannot meet the engagements he assumes when he takes the funds of his customers deposited to be placed to their credit, the transaction may involve an implied representation or concealment which characterizes it as fraudulent on the part of the banker."

The court further says:

"Mere insolvency does not necessarily render the receipt of money by a banker fraudulent; but insolvency which is hopeless and irremediable, and renders him liable to shut his doors at any moment, makes it improper for him to continue the business of taking deposits, without notice of his situation to customers."

In this case the Murray Hill Bank had been fairly prosperous. Its stock had sold at four to one. The directors themselves had bought stock in recent years. One of them paid three to one for some of it within a year of its closing. Its stock had sold at auction for 140 within three months of its failure. The examination of the bank superintendent in June, 1896, showed a surplus of $80,000 after charging off $85,000 of doubtful paper. As the capital stock was $100,000, the appearance was that there was $180,000 to meet any possible deficiency. The bank had never defaulted. None of its paper had gone to protest. When it was closed by the bank superintendent on August 11th all the directors had money on deposit, —their average, usual balance. None of them had drawn money in anticipation of any financial trouble on the part of the bank. The directors deposited money up to the time of failure. One of them had $3,000 in hand, and ticket made out to deposit it, on the morning the bank closed. They all held as much stock as they ever had held, and they all testify that the closing of the bank was entirely unexpected to them; that they supposed it was entirely solvent; and, if permitted to do so, they could have, by nursing their assets, run along, and paid their entire indebtedness. The bank superintendent testifies that he closed the bank, not because of its then insolvency, but because they did not have the legal cash reserve on hand, and, in his opinion, it was not safe for them to continue any business, although he believed at that time the bank was solvent. He further says that he told the directors that they must raise $100,-000 additional in cash to be permitted to continue business, and he reduced this to $50,000, but required that they raise it that day, and, as they were unable to comply with his demand, he closed the bank. It appears the closing of the doors of the bank was as sudden and

unexpected to the directors as it was to the depositors.    It is now
apparent that the bank was then insolvent, but there is no proof be-
fore me to justify the finding that its officers knew of its insolvency,
and, in the absence of such proof, and in the face of the fact that
there is so much proof to the contrary, and of their entire good faith,
I cannot find them guilty of such knowledge, or of the fraud charged
in the complaint.    Fraud must be proven; it cannot be guessed.

This is a question as to whether assets of the bank shall be dis-
tributed ratably among all the creditors, or whether some shall have
a preference over others.    None should have a preference unless
clearly entitled to it.    I think this plaintiff should only share in
equal proportions with the other depositors.    Complaint dismissed
on the merits.

Complaint dismissed.