## DEPOSITS IN INSOLVENT BANKS.

[Circuit Court of Guernsey County.]

P. L. Baker v. R. V. Orme and David Okey, as Receivers of
The Commercial Bank Company.

Decided, April, 1905.

*Banks—Deposit in, when Insolvent—To the Knowledge of Cashier and
Manager—Can be Charged Against Fund in the Hands of Re-
ceiver, When.*

Where a general deposit was made in a bank which at the time is
hopelessly insolvent, which insolvency is known to the cashier
who is the general manager of the bank, and is unknown to the
depositor, the other officers of the bank taking no control over the
business whatever, and immediately after such a deposit the bank
fails and goes into the hands of receivers, the funds coming into
the hands of the receivers being more than the amount of such
deposit and increased by the amount of the deposit—*Held;* The
depositor has a right by a suit in equity against the receivers to
charge such deposit upon the fund in the hands of the receivers
and have the same paid in preference to the general creditors.

Brief of Mathews & Mathews, attorneys for plaintiff:

The knowledge of Patterson, as the cashier of the Commercial
Bank Co., and as the general manager of the business of this
bank, that this bank was hopelessly insolvent for a long time
prior to the receiving of plaintiff's deposit, is imputed to and be-
comes the knowledge of the bank. Patterson's knowledge of the
bank's insolvency was acquired through a long series of trans-
actions as cashier of the bank, but it makes no difference how he
acquired this knowledge, if he had it prior to the time plaintiff
made his deposit and held out the bank to plaintiff and to the
public as solvent. *Craigie et al v. Hadley,* 99 N. Y., 131; *St. L.
Ry. Co. et al v. Johnson,* 138 U. S., 567-76; *Marlin v. Webb,* 130
U. S. 267; *Bank v. Walker,* 130 U. S., 267; *Holden, Trustee,* v.
*N. Y. & Erie Bank,* 72 N. Y., 286.

The fact that Patterson, the cashier, and Barber, the vice-
president, who had knowledge that this bank was hopelessly in-
solvent, concealed its condition from the other officers and direc-

tors of the bank does not bring the bank, as a principal, within the exception to the rule as to knowledge as stated in Pomeroy's Equity, Vol. 2, p. 122, Section 675, so as to relieve the bank of being charged with such knowledge, even though the insolvent condition of the bank was caused chiefly by loans made by the bank to Patterson and Barber, and to various corporations with which they were connected.

The Commercial Bank being insolvent at the time it received plaintiff's deposit, which was during the last hour that the bank was open for business, and its insolvency being known to two of its officers, each of whom was also a director, the receipt of plaintiff's deposit was a fraud upon him; no title passed to the bank, and he can reclaim and recover the whole amount of his deposit. *Craigie* v. *Hadley, supra; St. L. Ry. Co.* v. *Johnson, supra; Beal, Recr.,* v. *City of Somerville,* 50 Fed. Rep., 647; *Wasson* v. *Hawkins,* 59 Fed. Rep., 233; *City of Philadelphia* v. *Eckels,* 98 Fed Rep., 485; *City of Philadelphia* v. *Aldrich,* 98 Fed. Rep., 487; *Richardson* v. *New Orleans Coffee Co.,* 102 Fed. Rep., 785; *Richardson* v. *N. O. Debenture Red. Co.,* 102 Fed. Rep., 780.

Plaintiff's deposit consisted of two checks and cash. One of the checks came into the hands of the first receiver appointed, and was collected by him. The other check was forwarded to the Commercial Bank's correspondent on the day it was deposited, and the amount thereof credited to the account of the Commercial Bank, and afterwards the amount of this check was paid to the receivers.

Plaintiff having traced the proceeds of these checks into the receivers' hands, is entitled to recover the amount thereof. *Beal, Recr.,* v. *City of Somerville,* 50 Fed. Rep., 647; *St. L. & S. F. Ry. Co.* v. *Johnson,* 133 U. S., 566; *Craigie* v. *Hadley, Recr.,* 99 N. Y., 131; *City of Philadelphia* v. *Eckels,* 98 Fed. Rep., 485.

The cash deposited by plaintiff was mingled with the bank's money within less than an hour before the bank closed on the last day it was open for business, and the amount of plaintiff's cash deposit was only a small per centage of the cash in the bank when it closed, which amount was placed in the receivers' hands.

It is conceded by defendants that the money which came into
their hands, as receivers, was increased by the amount of plaint-
iff's deposit; but it is claimed that he is not entitled to recover
his cash deposit, unless he can trace the identical money in their
hands, and that, since this cash deposit was mingled with the
bank's funds before the receivers took charge and possession
of the funds and property of the bank, its identity has been
lost and plaintiff can not recover the amount thereof.

"The fact that the money was not marked, and by mingling
with other funds of the bank lost its identity, does not affect the
right to recover in full, if it can be traced to the vaults of the
bank, and it appears that a sum equivalent to it remained con-
tinuously therein until removed by the receiver." *Massey* v.
*Fisher*, 62 Fed. Rep., 957.

"It is not essential to the right of a depositor to recover from
the receiver of an insolvent bank money deposited after it was
known by its officers to be insolvent, that he should be able to
trace the identical money, but it is sufficient if the money which
came into the receivers' hands was increased by the amount of
the deposit." *Richardson* v. *New Orleans Debenture Redemp-
tion Co.*, 102 Fed. Rep., 780.

"Where money and checks are unsuspectingly deposited in a
bank, which is known by its managing officer to be hopelessly
insolvent, a few minutes before closing hour on the last day on
which it does business, and the checks are subsequently collected
by the bank's clerk, the *whole* of the *deposit* is charged with a
trust, and an equal amount may be recovered from the receiver
who retains the specific money among the general mass of the
bank's funds." *Wasson* v. *Hawkins*, 59 Fed. Rep., 233.

Brief of Fred L. Rosemond, R. T. Scott and C. S. Turnbaugh,
for defendants.

The deposit was not for collection, nor a special deposit, but
was a general one, and the relation of debtor and creditor, and
not a trust, arose. *Covert* v. *Rhodes,* 48 O. S., 66, 71; *R. R. Co.*
v. *Bank*, 54 O. S., 60, 71; Morse, Banks, Sections 186, 573, 575.

Even if it had been a deposit for collection the fund can not
be followed because of the indistinguishable mingling of the
funds. *Reeves* v. *Bank,* 7 O. S., 465, 3d Syl., 482, 484; 2 Morse,
Banks, Section 629.

Baker can get relief only by actually or in effect obtaining a rescission, and the only basis suggested is fraud. Mere insolvency and not disclosing it are not enough; there is no presumption of fraud, and plaintiff must prove it. 2 Morse, Banks, Sections 629, 589; *Quinn* v. *Earle* cited 2 Morse, Banks, Section 629; 95 Fed., 728.

There is no allegation of misrepresentation; the complaint is of silence only; and silence affords no ground for relief unless there were both knowledge and duty to disclose. Baker dealt with Scott, a mere employe, and knowledge on Scott's part of insolvency is neither shown nor claimed. The knowledge which plaintiff must show is that of the board of directors. *Balbach* v. *Frelinghuysen*, 15 Fed., 675.

Notice to one director is not enough. 1 Morse, Banks, Section 112; Story, Agency, Section 140c; *R. R. Co.* v. *Everett*, 19 C. C., 205.

Knowledge of Patterson, cashier, and of Barber, vice-president, does not bind the bank as to this transaction because (*a*) prior to this deposit both had absconded and their official connection with the bank had ended, and (*b*) because the insolvency was caused by their own frauds upon the bank, in violation of their duty, and concealed by them. Instead of giving information to the bank company they deceived it, and fled after ruining it. 1 Morse, Banks, Section 104a; Story, Agency, Section 210; 2 Pomeroy's Eq. Jur., Section 674; Note 10 L. R. A., 706, "Exceptions to Rule as to Imputed Notice."

The only decisions of the Supreme Court relate to the deposits for collection only, and the question made seems to be covered by no special case.

Cook, J.; Burrows, J., and Laubie, J., concur.

Appeal from Common Pleas Court of Guernsey County.

This action is for the purpose of charging the claim of plaintiff upon the funds in the hands of defendants, as receivers of the Commercial Bank Company, and to order the same paid out of the fund as a preferred claim.

The Commercial Bank Company is a corporation organized under the general corporation act of the state.

There is very little, if any, dispute about the facts in the case which are substantially as follows: On June 13, 1904, plaintiff, who for a long time had been a customer of the bank, deposited money in the sum of $99 and two checks obtained from his customers, one for the sum of $169, drawn on the old Citizens Bank of Zanesville, and the other for the sum of $15 on the National Bank of Cambridge. The money and checks were credited as one item in the pass book of plaintiff and passed to his credit in the bank, he at that time having a credit in the bank of $100, which made a balance in his account of $383. This deposit was made in the usual course of business of depositors, nothing being said about collecting the checks for plaintiff and no doubt it was a general deposit and the relation of debtor and creditor immediately took place.

The deposit was received by an employe of the bank who was authorized to receive the same. He had been acting as assistant cashier for about a year, but was never elected as such by the board of directors.

In less than an hour after the deposit was made the bank failed and closed its doors. The money was immediately placed among the other money of the bank and became indistinguishably mingled with the same. The check on the old Citizens Bank of Zanesville was placed to the credit of the Commercial Bank Company by it, making a balance in favor of the same of $583.-55, which was paid over to the receivers by said old Citizens Bank and by them placed in the fund in their hands. The check for $15 was collected by the receivers from the National Bank of Cambridge and placed in the fund in their hands. There was on hand in money in the bank at the time of its failure, including the deposit of $99 made by plaintiff, the sum of $3,026.16 which went into the hands of the receivers.

The evidence further shows that at the time of said deposit and of the failure, the bank was hopelessly insolvent and had been for at least several months previously and that the cashier and vice-president had full knowledge of such insolvency, and that plaintiff had no knowledge of such insolvency whatever.

H. C. Patterson was cashier of the bank at the time of its failure and had been such cashier from the time of its organization some three years previously. He was not only the cashier but had the general managment of the bank; conducting all its business; making all loans and discounts and doing all its business. H. O. Barber was the vice-president. He was the brother-in-law of Patterson, but gave the affairs of the bank practically no attention whatever, as was the case with the president, and all the directors except Patterson.

Patterson, the cashier, and Barber, the vice-president, were largely engaged in outside enterprises, organizing and building street railways, electric plants, shoe manufactories and other concerns and were also largely interested in two other banks which were tributary to the Commercial Bank Company.

The failure of the bank was entirely through the overdrafts of Patterson and Barber, the money being used in bolstering up their outside enterprises. The money was drawn out upon their checks or obtained on debit slips all of which were charged up in their accounts and the books of the bank showed the condition of their accounts open to any one of the officers or directors desiring to examine the accounts. The overdrawing of their accounts had been going on almost from the organization of the bank. Neither Patterson nor Barber informed the president or any of the directors of the insolvency of the bank and they had no knowledge of such insolvency whatever.

Under these facts is the claim of plaintiff preferred and entitled to be paid out of the fund in the hands of the receivers in preference to the general creditors?

Two reasons are strenuously urged by the attorneys for the receivers, why the same should not be so ordered:

First. That the insolvency of the bank was due to the act of the cashier and vice-president in using the funds of the bank in bolstering up their outside enterprises which was a fraud upon the bank, and therefore their knowledge of the insolvency arising from such cause was knowledge obtained in a fraudulent act of their own and such knowledge being withheld from the other

officers and directors of the bank, then the bank is not charge-able with such knowledge.

Second. The money having been mingled with the other moneys of the bank before the bank failed and closed its doors and not being distinguishable, and one of the checks having gone to the credit of the bank and the other being collected by the receivers and also indistinguishably mingled with the funds of the bank, the same can not be recovered back in kind, and therefore the same can not be charged upon the fund in the hands of the receivers.

As to the first reason. There seems to exist an exception to the general rule that knowledge to the agent is knowledge to the principal, in this, that when an agent has in the course of his employment been guilty of an actual fraud against his princi-pal, contrived and carried out for his own benefit, and he inten-tionally conceals such fraud from his principal, then his principal is not chargeable with such knowledge, even though the agent at the same time intended to defraud another party. The rule is most strongly stated in Pomeroy's Equity, Section 675. It reads as follows:

"The second exception is much more important and of far wider application. It is now settled by a series of decisions, pos-sessing the highest authority, that when an agent or attorney has, in the course of his employment, been guilty of an actual fraud, contrived and carried out for his own benefit, by which he in-tended to defraud and did defraud his own principal or client, as well as, perhaps, the other party, and the very perpetration of such fraud involved the necessity of his concealing the facts from his own client, then, under such circumstances, the princi-pal is not charged with constructive notice of facts known by the attorney and thus fraudulently concealed. In other words, if in the course of the same transaction in which he is employed, the agent commits an independent fraud for his own benefit, and designedly against his principal, and it is essential in the very existence or possibility of such fraud that he should con-ceal the real facts from his principal, then the ordinary pre-sumption of a communication from the agent to his principal fails; on the contrary, a presumption arises that no communica-tion was made, and consequently the principal is not affected with constructive notice. The courts have carefully confined the

operation of this exception to the condition described where a presumption necessarily arises that the agent did not disclose the real facts to his principal, because he was committing such an independent fraud that concealment was essential to its perpetration; it has never been extended beyond these circumstances. It follows, therefore, that every fraud of an agent in the course of his employment and in the very same transaction, does not fall within this exception; and most emphatically it does not apply when the agent's fraud consists merely in his concealment of material facts within his own knowledge from his principal.''

By reference to the notes to this section it will be seen that the rule is restricted to a very narrow compass, and it is doubted that the rule would apply to managing officers. (See cases cited in note.)

It will be observed that this rule only applies when an agent has, in the course of his employment, been guilty of actual fraud, contrived and carried out for his own benefit, by which he intended to defraud and did defraud his own principal, as well as, perhaps, the other party, and the very perpetration of such fraud involved the necessity of concealing the facts from his principal. Under such circumstances, the principal is not charged with constructive notice of facts known by the agent thus fraudulently concealed. Furthermore, it must be an independent fraud for his own benefit.

The facts in this case fall far short of sustaining the exception to the general rule. Patterson and Barber, the cashier and vice-president, were the owners of more than one-half of the capital stock of the bank; they had large outside enterprises; the funds of the bank were being used by them in the prosecution of these enterprises; it went along for nearly three years from year to year; the money was drawn out by them by checking upon their accounts the same as any other customer or by debit slips placed in the cash tills.

What independent act or fraud was done by them, or either of them, that they should necessarily conceal from their principal? The books showed their entire course of dealing which were open to the directors and all officers of the bank which

would entirely rebut any purpose of concealment. We, therefore, see no fact in this case to make it an exception to the general rule, that knowledge to the agent is knowledge to the principal and especially so where the evidence conclusively shows that Patterson was not only cashier in the ordinary sense, but that he had the entire control of the business of the bank.

The second claim of the receivers presents a question of more than ordinary importance.

As we have said, immediately upon making the deposit by plaintiff, the relation of debtor and creditor attached and the question presented is: Where a depositor makes a deposit in a bank under such circumstances, after the bank has become hopelessly insolvent, and of which hopeless insolvency the cashier, who is general manager of the bank, has full knowledge, and of which insolvency the depositor has no knowledge, and which deposit is indistinguishably mingled with the other funds of the bank, can such depositor insist that his claim shall be a charge upon the fund in the hands of the receivers and have the same paid to such depositor in preference to the general creditors, when the fund which the receivers received, including such deposit, is more than the amount of the deposit made by such depositor?

This question, in so far as we are informed, has never been determined by our Supreme Court.

The cases of *Reeves, Stephens & Co.* v. *The State Bank of Ohio,* 8 O. S., 465, and *Jones et al* v. *Kilbrett,* 49 O. S., 401, are not applicable for the reason that the deposits made in those cases were for collection, while in this, as we have stated, the deposit was an ordinary one and the relation of debtor and creditor immediately arose.

Counsel on both sides have argued the question very elaborately and with much research, citing a large number of authorities.

We shall not attempt to enter into a discussion of the question or review these authorities at length; sufficient to say that in our judgment the plaintiff's claim both for the money and checks should be paid by the receivers as a preferred claim and we base our judgment largely upon the case of *Quinn* v. *Earle,*

95 Federal Reporter, page 728, a case almost precisely like the one under consideration. The syllabus of that case is as follows:

"1. *Banks—Insolvency—Recovery of Deposit From Receiver.*—To authorize the recovery of a general deposit from the receiver of an insolvent bank on the ground that the bank was insolvent, and known to be so by its officers when the deposit·was received, and that the fraud authorized a rescission of the contract by the depositor, the thing deposited, or its proceeds, must be capable of identification in the hands of the receiver, or it must appear that the funds coming into his hands were increased by that amount.

"2. *Same Proof of Fraud in Receiving Deposit—Knowledge of Insolvency by Officers.*—To constitute·fraud on the part·a bank in receiving a deposit when insolvent, which will authorize a rescission by the depositor, and a recovery of the deposit from a receiver subsequently appointed for the bank, the officers of the bank must have known or believed that it was insolvent at the time the deposit was received; and such knowledge can not be presumed, but must be proved. The mere fact that the bank was known by the officers to be in an embarrassed condition is not sufficient to establish fraud."

In the opinion Mr. Justice Gray, on page 730 and 731, says:

"The principle of equity invoked by the complainant's bill is that where a bank, whose officers know it to be hopelessly insolvent, receives moneys or checks on deposit on the very eve of its failure, it commits such a fraud on the depositor, who is ignorant of its condition, that he is entitled to reclaim the moneys or proceeds of checks. This proposition, thus stated, must be assented to. It is a development of the doctrine that a contract founded on fraud is void, and may be rescinded at the option of the defrauded party, and can not be enforced against him, that no title to property so obtained passes, and that restoration of the property obtained by means of the fraud, if properly identified, can be compelled by appropriate proceedings in law or in equity. Considering the usage of business of the banks, when a general deposit is accepted by a bank, there is an implied contract between the depositor and depository, which creates the relation of creditor and debtor between them. A fraud on the part of the bank which induces the deposit vitiates this contract, at the option of the other party, as fraud would vitiate any other contract, and no rights can arise out of it to the bank. What the remedy will be, will depend in this case, as in others,

upon the situation of the parties and the subject-matter of the contract. Upon a rescission of the contract, and due notice thereof, the check or draft deposited, or the proceeds thereof, if sufficiently identified, may be reclaimed, if in the possession of the depository. With regard to personal property other than money, the question of identification is generally easy of determination. Not so of money, and perhaps some personal property other than money. If these be confused in the mass of exactly similar things, specific identification becomes impossible. But the more modern doctrine has come to be that, where the fraudulent depositary so mingles goods which he has obtained by fraud with the mass of like goods of his own, the whole may be seized, or considered as held in trust, until equitable separation of the property of the defrauded party is made. So, advancing one step further, where money thus obtained has gone to swell the aggregate in the possession of the fraudulent party, it may, under proceedings, be segregated in amount from such aggregate sum, and made the subject of a trust, in order to accomplish the ends of justice. If my bushel of corn be obtained from me by fraud, and be poured into the mass of similar grain in the bin of the party committing fraud, justice is satisfied, and no one can be wronged, by my having restored to me a bushel of the same grain out of the bin, though the identical grains obtained from me are not restored. If, on the other hand, the funds in possession of the defrauding bank be not increased by the property or the money so obtained, so that the aggregate amount of assets for distribution among the general creditors is not made larger by reason of the plaintiff's contribution thereto, then this extension of the doctrine of identification will not apply, and the complainant can not have remedy as for a preferred claim. All the cases referred to by the counsel for complainant are consistent with this distinction, and the case of *Bank* v. *Blackmore*, 21 C. C. A., 514; 75 Fed., 771, distinctly elaborates the doctrine just stated; Judge Taft, who delivered the opinion of the court, saying:

" 'No authority has been cited to show that a claim founded on fraud is entitled to a priority over other claims. It is only where, by the rescission of the contract out of which the claim arises, on the ground of fraud, the specific thing parted with, or its proceeds, can be sufficiently identified to be returned, that fraud seems to give a priority of distribution. It may not be necessary to show earmarks upon the proceeds of the thing parted with, to justify such a remedy; but it must at least appear that the funds in the hands of the receiver were increased

or benefited by the proceeds, and the recovery is limited to the extent of this increase or benefit. In every case relied on by counsel for appellant, recovery, if desired, was based on the fact that the property in the hands of the assignee or receiver of the person or bank against whom the claim of fraud, right to rescind, and priority of distribution was made, included in its mass either the very thing parted with, or its proceeds. *Railway Co.* v. *Johnston,* 133 U. S., 573; 10 Sup. Ct., 390; *Armstrong* v. *Bank,* 148 U. S., 50; 13 Sup. Ct., 533; *Craigie* v. *Hadley,* 99 N. Y., 131; 1 N. E., 537.' "

Decree in favor of plaintiff as prayed for in his petition.

*Mathews & Mathews,* for plaintiff.

*Rosemond, Scott & Turnbaugh,* for defendant.