Judgment reversed, new trial ordered, costs to appellant to abide event.

THE NEW YORK BREWERIES COMPANY (LIMITED), Plaintiff, v. FRANCIS HIGGINS, as Receiver of the North River Bank, Defendant.

*Bank — deposit in an insolvent bank — when recoverable — evidence of an assertion of solvency.*

If a bank receives deposits of money, drafts or checks, after knowledge of its insolvency is acquired by the officers or agents in charge thereof, the bank is, in a legal sense, guilty of fraud.

While the effect of a deposit in a solvent bank is to vest the title of the thing deposited in the bank, upon an implied contract that it shall repay the amount

upon the checks of the depositor, yet, if the bank be chargeable with fraud in receiving the deposit, the depositor may, on discovering that fact, rescind the contract and reclaim the property, unless it has in the meantime passed into the possession of a *bona fide* holder.

The fact that a bank keeps its doors open and transacts business is a continuing assertion of its solvency.

MOTION by the plaintiff, The New York Breweries Company (Limited), for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the dismissal of the complaint directed by the court on the 15th day of May, 1893, after a trial at the New York Circuit before the court and a jury.

*Louis Marshall*, for the plaintiff.

*Peter A. Hendrick*, for the defendant.

PARKER, J. :

If a bank receive deposits of money, drafts or checks after knowledge of its insolvency is acquired by the officers or agents in charge it is, in a legal sense, guilty of fraud. While the effect of a deposit in a solvent bank is to vest the title of the thing deposited in the bank upon an implied contract that it shall repay the amount upon the checks of the depositor, yet, if the bank be chargeable with fraud in receiving it, the depositor may on discovering that fact rescind the contract and reclaim the property, unless it has in the meantime passed into the possession of a *bona fide* holder. (*Cragie* v. *Hadley*, 99 N. Y. 131; *Importers & T. N. Bank* v. *Peters*, 123 id. 272.)

The plaintiff sought to prove such facts upon the trial as would entitle it to maintain this action under the rule stated. The trial court dismissed the complaint at the close of plaintiff's case, holding that there was no evidence that the officers of the bank knew of its insolvency at the time the deposits of the plaintiff were accepted.

An examination of the evidence leads us to concur in the position thus taken.

The commencement of the action was doubtless prompted by the fact that rumors touching the affairs of the bank had led the plaintiff's representatives, before making the last deposit, to take the precaution of asking the president to make a frank statement about its

condition.   This was at about eleven o'clock of the last business day of the bank.   The president, responding to the inquiry, said : " Mr. Graff, all that I can tell you is that everything is going on as usual, as you see," and he says : " We are all right."   He says : " You can tell Mr. Flannagan," he says, " the banks are all pledged to stand by one another."   And he said : " The Clearing House will also stand by us ; we have it at our back."   And he says : " You can tell Mr. Flannagan for me that there is not the slightest thing ; there is no trouble to be apprehended at all."

It will be observed that the assurance of the president added nothing really to that which the bank gave by keeping its doors open and transacting business in the ordinary way.   Such conduct of itself is a continuing assertion of the solvency of a bank and " that there is no trouble to be apprehended at all."

Was there any evidence then before the court authorizing the jury to find that the officers in charge had knowledge of the wreck impending?   Several of. the directors were called by the plaintiff for the purpose of proving that such was the fact, but their testimony did not tend in that direction.   Joseph Brokaw, who had been a director of the bank for thirty years, a regular attendant at the directors' meetings, and was present on the last day of the bank's existence, testified at some length in relation to certain paper upon which the receiver has been able to realize comparatively little, the most important of which was the paper of Paige, Carey & Co., amounting to about $480,000, for which the bank held as collateral an assignment of the amount due the firm from the city of New York, for work done under certain aqueduct contracts.   With reference to it he said : " We never had any doubt as to the Paige paper, sir ; never to the day of the failure."

John H. Starin, another director, testified that he made an investigation with reference to the Paige paper, and reached the conclusion that the loan was well secured.   As a further evidence of his confidence that the paper was collectible and the bank solvent he testified that he caused an investigation of the bank and its assets to be made, and he offered a few days before its doors were closed to take an assignment of the stock, assuming the liability of the bank, and go on with its business under a new board of directors, which offer he renewed after the notice had been put up that the bank

was temporarily closed, and the Superintendent of the Banking Department had taken possession.

Wm. E. Teft, another director, who lived at the same hotel with Mr. Paige, testified that he had had the affairs of Paige, Carey & Co. investigated in the same manner as he was accustomed to investigate those of the customers of his firm (Teft, Weller & Co.), and reached the conclusion that the bank was well secured. He also testified that a day or so before the suspension of the bank he advanced to it the sum of $28,000, because it was short of legal tender notes necessary to make exchanges at the Clearing House. Without referring to the testimony of other witnesses who were connected with the bank, it may be said generally that not a word can be found indicating that they believed the bank to be insolvent, or that it would be unable to continue to conduct its business as usual.

The bank examiner, upon whose report the action for dissolution was based, commenced an examination of the bank on the morning of November 12, 1890, the last day of its existence. He said that about two o'clock in the afternoon of that day the president came to him with the information that a check for $12,000 had been presented for payment, and said that there was not money enough on hand to pay it, and solicited the advice of the examiner, who informed him if he paid one dollar while confessing his inability to pay all, he did so at his peril. Acting upon the advice of the examiner the notice was put up that the bank was temporarily closed.

It turned out that the president was mistaken in his supposition that there was not currency enough on hand to pay the check. An examination made after the bank was closed led to the discovery that $61,000 in currency had been in some manner overlooked, and in addition there were checks amounting to $81,566.36, which afterwards passed through the Clearing House, and checks of out-of-town banks aggregating $43,789.44 which were subsequently nearly all paid.

From the twelfth to the nineteenth of November the Superintendent of the Banking Department was in possession of the bank, at the expiration of which time the bank examiner made a report upon which the action for dissolution was founded, and his report

showed an impairment of the capital, which was $240,000, to the extent of $99,904.90.

In reaching this conclusion he made deductions from the face value of many of the assets, which were necessarily to some extent not based upon actual knowledge of value, but upon his judgment, founded upon such investigation as he had the opportunity to make.

Arnold Davidson, an expert accountant, called by the plaintiff, testified that he made an examination in the early part of 1892 of the books of the bank, as of the 5th day of September, 1890, and that as a result of the examination he reached the conclusion that the capital stock was at that time impaired $83,608.50. In arriving at this result he valued many of the assets at less than their face, and in some instances at a less sum than was subsequently realized on a sale by the receiver.

Without further reference to the evidence, it may be said that it does not show that, prior to the making of the deposits, any of the drafts of the North River Bank had gone to protest, or that any of the officers knew or believed the bank to be either insolvent or in danger of insolvency.

Indeed, the counsel for the appellant in his brief frankly admits the record to be barren of any affirmative evidence indicating that the officers of the bank had actual knowledge for any period of time of the insolvency of the bank, his contention being that the jury would have been justified in finding, and, therefore, should have been permitted to find, that the bank was insolvent and that its officers knew of its real condition. We cannot agree with him. It is true that the loan to Paige, Carey & Co., as well as other loans, have proved unfortunate. Their claim against the city as sub-contractors under O'Brien & Clark, amounting to a much larger sum than their indebtedness to the bank, has proved to be uncollectible.

The question is not whether it has proved to be good or bad, but whether the directors and officers of the bank at the time plaintiff made its deposit believed it to be good. Upon that question there is no dispute. There is no evidence whatever that they regarded the loan as insecure. On the contrary, there is abundant evidence that after an investigation made by certain of its directors they believed it to be good. There were other smaller loans which were bad, some of which were known to be worthless by the officers of

the bank, as is doubtless the case in nearly all banks.   But the loans which the evidence shows they understood to be bad did not aggregate such a sum as would have justified them in regarding the bank as insolvent.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.