FRANCIS HIGGINS, as Receiver of THE NORTH RIVER BANK in the City of New York, Respondent, *v.* CHARLES C. WORTHINGTON, Appellant.

*Banking corporation — definition. of "insolvency" of — facts showing insolvency.*

Insolvency in respect to a banking corporation means an insufficiency of the property and assets of the corporation to pay all its debts.

Where, at the time when a bank closes its doors, its obligations are much in excess of its assets, and immediately afterwards a temporary receiver of its property is appointed, and this is followed by a final judgment of dissolution, based upon the ground of insolvency, it must be considered that the bank was insolvent when it closed its doors, notwithstanding the fact that it might possibly have continued to transact business for a day or two longer.

APPEAL by the defendant, Charles C. Worthington, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of April, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of New York, and also from an order entered in said clerk's office on the 6th day of May, 1896, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to collect a debt due by the defendant to an insolvent banking association of which the plaintiff is the receiver. The defendant interposed as an offset certain deposit accounts standing upon the books of the bank, which had been assigned to him the day before the action for the dissolution of the bank was commenced.

*Paul R. Towne*, for the appellant.

*Benjamin Yates*, for the respondent.

O'BRIEN, J.:

The facts and questions involved in this controversy were fully discussed upon the former appeal (90 Hun, 436), and need not be again repeated. To defeat the defendant's right to an offset it was therein held that it was necessary for the plaintiff to prove that the bank was insolvent at the time of the assignment of the accounts. Accordingly, upon the trial now under review the statement prepared by the bank examiner, upon which he was examined and cross-examined as to each item, together with the receiver's testimony as to the amounts realized upon the assets, supplemented the testimony given upon the former trial, and was sufficient, under the ruling of the learned trial judge, to justify the jury in inferring that the bank was insolvent and unable to meet its obligations on the day when it closed its doors. On that day a check of $12,500 was presented, and the president of the bank told the examiner, who was then engaged in looking over the bank's condition, that the check could not be met and stated that there was but $3,000 cash in hand at that time. The president, upon applying to the bank examiner for advice, was told to put up a sign, " closed temporarily," and then to " go around among your friends   *   *   *

and see if you can raise sufficient funds with which you can conduct business." It subsequently transpired that there was at that time on deposit in the vaults of the bank a sum in cash of over $60,000, and in addition some checks and exchanges aggregating considerably over $100,000. Upon this showing, the appellant confidently asserts that, whilst the bank closed its doors, and six days later an action was commenced to procure the dissolution of the corporation on the ground of insolvency, which resulted the next day thereafter in the appointment of a temporary receiver and finally in the judgment of dissolution, the inference of insolvency as of the date when the bank closed its doors was not warranted.

This naturally brings up for discussion the meaning of the term "insolvency" as relating to a banking corporation. The one pre- ferred by the appellant is taken from 11 American and English Encyclopædia of Law, 168, where insolvency is defined as "the state of a person who, from any cause, is unable to pay his debts in the ordinary or usual course of trade;" and "a trader who is not able to pay all his debts in the usual ordinary course of busi- ness, as persons carrying on trade usually do, is to be regarded insolvent." (*Driggs* v. *Moore*, 1 Abb. [U. S.] 448.) Armed with these definitions, the appellant insists that it was incumbent upon the plaintiff to prove that the bank, on the day it closed its doors, did not have in its possession funds sufficient to meet the demands which were made against it on that day in the ordinary course of business, and the evidence not going to that extent, the complaint should have been dismissed.

The error into which the appellant has fallen is in confusing the term insolvency, as applied to ordinary traders, with the term as used in relation to a banking corporation. An examination of dic- tionaries and of reported cases will show that the word has different meanings and is variously applied, and hence the necessity of care being taken in its use and of confining it in each particular case to its exact legal meaning. Undoubtedly, in a general sense, insolvency means the pecuniary condition of a person who has not means to pay his debts as they fall due, according to the usual course of busi- ness. But not only in England, but in this country, under bank- rupt and insolvent acts, the statutes which at times use these terms interchangeably and treat them as synonymous, at other times

distinguish between bankruptcy and insolvency, the one having reference to a person not a trader, and the other to one who is engaged in trade. But as said by COWEN, J., in *Herrick* v. *Borst* (4 Hill, 652), where various definitions of insolvency are given : " The meaning of the word *solvency* is usually tested by its opposite, *insolvency*. Suppose a man unable to pay all his debts from his own means, or that all his debts cannot be collected out of those means by legal process; is there any doubt that, in the general sense of the word, he is insolvent? Debts are paid with property, and ' in one sense,' says Mr. Bell, by which he no doubt intends the primary and ordinary sense, ' insolvency is the inadequacy of a man's funds to the payment of his debts.' " In view, however, of the authoritative definition which this word, as relating to a banking corporation, has received, it would serve no useful purpose to prolong this discussion, it being held that " insolvency in respect to a banking association means an insufficiency of the property and assets of the company to pay all its debts." (Abb. Law Dict. ; *Curtis* v. *Leavitt*, 15 N. Y. 9, 199. See, also, *Oakley* v. *Patterson Bank*, 2 N. J. Eq. 173 ; *Coryell* v. *New Hope, etc., Bridge Co.*, 9 id. 457.)

The question is thus narrowed down to a determination whether sufficient evidence was presented by the plaintiff from which it could be inferred by the jury that the bank, on the day it closed its doors, was in fact insolvent, *i. e.*, that it was unable at that time to pay all its debts and obligations. We think there is no question but that the evidence was sufficient, for not only were its obligations much in excess of its assets, but the closing of the doors, followed almost immediately thereafter by the appointment of a temporary receiver, and subsequently by a final judgment of dissolution on the ground of insolvency, must be regarded as evidence from which the jury could infer insolvency as of the date when the doors closed. The closing of its doors, the ceasing to do business and thereafter refusing to meet any of its demands, must be regarded as open and notorious acts of insolvency; and when supplemented by evidence showing that on that day it was unable to meet all its debts and obligations, the jury had the right to infer that, as matter of fact, the bank on that day was insolvent. Nor is the force of this testimony destroyed by the evidence adduced that the bank might have remained open that day or the next and possibly met all the demands

which, during those two days, might have been made upon it. For it still appears that on that day it refused to pay the $12,500 check which was presented, closed its doors to the transaction of all business, which it has never since resumed, and its right and power ever again to do business has been taken away by the final judgment of dissolution.

The appellant directs our attention to the case of *The New York Breweries Company* v. *Higgins* (79 Hun, 250), which was an action against this same receiver to recover the deposit made by the company plaintiff in that action on the 12th day of November, 1890, wherein it is said the receiver insisted that the bank was solvent on that day; and the appellant, therefore, contends that his attitude then and now is inconsistent. In this we think the counsel fails to note the distinction between the two cases. In some aspects, upon the then condition of the bank, the testimony is somewhat similar; but there it was not alone the question of whether the bank was solvent or insolvent on that day; but the plaintiff's right to recover in the former action depended entirely on the presentation of evidence that the officers of the bank had knowledge of such insolvency; and upon this latter branch the case was entirely barren of any evidence from which such an inference could be drawn; but, on the contrary, the evidence tended to support the receiver's contention there that though insolvent, the officers had no knowledge thereof. That was the precise point upon which the General Term rested its decision, as evidenced by the opening sentence of the opinion of the court which was written by the same justice that wrote the opinion upon the former appeal in this case. He there says: "If a bank receive deposits of money, drafts or checks after knowledge of its insolvency is acquired by the officers or agents in charge, it is, in a legal sense, guilty of fraud.  *  *  *  The trial court dismissed the complaint at the close of plaintiff's case, holding that there was no evidence that the officers of the bank knew of its insolvency at the time the deposits of the plaintiff were accepted. An examination of the evidence leads us to concur in the position thus taken." The distinction between the two cases is, therefore, marked and broad. The fact that there the deposit was made and accepted while the bank was doing business and had its doors open was commented upon, the court saying: " Such conduct of itself is a continuing assertion of the

solvency of a bank," or, as correctly summarized in the head note: "The fact that a bank keeps its doors open and transacts business is a continuing assertion of its solvency." It is to be noted with reference to that case that the court did not hold that there was not sufficient evidence to go to the jury on the question of solvency; but it is held that, inasmuch as the plaintiff, in order to recover, must in addition produce evidence authorizing the jury to find that the officers in charge had knowledge of the wreck impending, that because of the lack of such evidence the complaint was properly dismissed.

We have examined the exceptions which have been presented in reference to certain rulings upon evidence, and also to refusals of the court to charge certain requests of the defendant, and as they are without merit they should be overruled.

The judgment should, therefore, be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.